1 | **WANGER JONES HELSLEY PC**
2 | 265 E. River Park Circle, Suite 310
Post Office Box 28340
Fresno, California 93720
3 | Telephone: (559) 233-4800
Facsimile: (559) 233-9330
4 | E-mail: tjones@wjhattorneys.com,
jkinsey@wjhattorneys.com
5 |
6 | Timothy Jones #119841
John. P. Kinsey #215916
7 |

FILED

JUN 29 2012

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **RIVERSIDE DIVISION**

| | |
|---|---|
| In Re | Case No. 6:12-bk-17663-DS |
| DESERT EQUIPMENT, INC. | Chapter Number: 11 |
| Debtor. | Adversary Proceeding No. |
| UNITED SECURITY BANK, | **COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT** |
| Plaintiff, | **[11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B)]** |
| v. | |
| DESERT EQUIPMENT, INC. | |
| Defendant. | |

Plaintiff United Security Bank ("Plaintiff" or "USB"), a creditor of Debtor Desert Equipment, Inc. ("Defendant" or "DEI"), brings this action against Defendant to determine the non-dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523 (a)(2)(B), and in support thereof alleges as follows:

///

///

///

{7057/018/00365745.DOC }                    1

# I.

## JURISDICTION & VENUE

1.      This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 523. This is an adversary proceeding pursuant to Fed. R. Bankr. Proc. 7001(6) and a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A)(I) and 157(b)(2)(O).

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

# II.

## PARTIES

3.      USB is, and at all times herein was, a California corporation duly organized and existing under and by virtue of the laws of the State of California, and operating within the State of California.

4.      USB is informed and believes, and on that basis alleges, that Defendant Desert Equipment, Inc. is a California corporation duly organized and existing under and by virtue of the laws of the State of California, and operating within the State of California.

# III.

## BACKGROUND ALLEGATIONS

5.      On or about August 14, 2006, USB loaned DEI $4,797,000.00 [hereinafter "Loan 80986601"], as evidenced by a Promissory Note and a Construction Loan Agreement. Attached hereto as **Exhibit "A"** are true and correct copies of the Promissory Note and Construction Loan Agreement, dated August 14, 2006. Loan 80986601 was modified, *inter alia*, to extend the maturity date, on August 5, 2008, November 17, 2008, January 5, 2009 and April 5, 2009 through Debt Modification Agreements executed on those dates. Attached hereto as **Exhibit "B"** are true and correct copies of the Debt Modification Agreements dated August 5, 2008, November 17, 2008, January 5, 2009 and April 5, 2009.

6.      On or about September 22, 2009, Loan 80986601 was again modified as evidenced by the September 22, 2009, Commercial Loan Agreement: Draw Loan and September 22, 2009, Debt Modification Agreement. Attached hereto as **Exhibit "C"** are true

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT**

1  and correct copies of the Commercial Loan Agreement: Draw Loan and Debt Modification

2  Agreement, dated September 22, 2009.

3         7.    Loan 80986601 was also subsequently renewed and modified by the

4  December 14, 2009, Promissory Note: Renewal Note and the December 14, 2009, Commercial

5  Loan Agreement: Single Advance Loan, and extended the maturity date for the loan from

6  December 5, 2009, to December 5, 2012. Attached hereto as **Exhibit "D"** are true and correct

7  copies of the Promissory Note: Renewal Note and Commercial Loan Agreement: Single

8  Advance Loan, dated December 14, 2009. By agreeing to the renewal, modification, and

9  extension of Loan 80986601, USB did not exercise its right to exercise its remedies against

10  DEI and several guarantors of Loan 80986601 upon DEI's failure to repay Loan 80986601 in

11  full on or before December 5, 2009.

12         8.    The December 14, 2009, Commercial Loan Agreement: Single Advance

13  Loan states, in pertinent part:

14       **5.**    **FINANCIAL STATEMENTS.** I will prepare and maintain my
   financial records using consistently applied generally accepted

15  accounting principles then in effect. I will provide you with
   financial information in a form that you accept and under the

16  following terms.

17       **A.**    **Certification.** I represent and warrant that any financial
   statements that I provide you fairly represents my financial

18  condition for the stated periods, is current, complete, true
   and accurate in all material respects, includes all of my

19  direct or contingent liabilities and there has been no
   material adverse change in my financial condition,

20  operations or business since the date the financial
   information was prepared.

21

22      . . . .

23         9.    The December 14, 2009, Commercial Loan Agreement: Single Advance

24  Loan also states, in pertinent part:

25       **4.**    **WARRANTIES AND REPRESENTATIONS.** I make to you
   the following warranties and representations which will continue

26  as long as this loan is in effect, except when this agreement

27  provides otherwise.

28      . . . .

**K.**    **Adverse agreements.** I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations.

**L.**    **Other claims.** There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents. No outstanding claims or rights exist that may result in a lien on the Property, the Property's proceeds and the proceeds of proceeds, except liens that were disclosed to an agreed to buy you in writing.

**M.**    **Solvency.** I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities. I will not become insolvent by the execution or performance of this Loan.

10.    Prior to the renewal, modification, and extension of the maturity date for the Loan 80986601, Jesse Warner, DEI's President at that time, and John S. Winchell, DEI's CERTIFIED PUBLIC ACCOUNTANT, made written financial representations to USB, including the submission of financial statements and other information relating to DEI's financial condition. USB relied on this documentation in deciding to renew, modify, and extend the term of Loan 80986601.

11.    The financial representations made by DEI, through Ms. Warner and Mr. Winchell, to USB, included representations that DEI held interests in several entities with a value of approximately $3,100,000. These representations included, but were not limited to:

- DEI held a 100% interest in an entity called Park Reserve LLC with a value of approximately $1,036,000.

- DEI held a 66.6% interest in an entity called The View LLC, and that the value of DEI's investment was worth approximately $1,284,000.

- DEI held an interest in an entity named Indian Paint Brush, Inc., and that the value of DEI's investment was worth approximately $280,000.

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT

12.    In addition to the foregoing representations, the financial statements and other information relating to DEI's financial condition prior to USB's agreement to renew, modify, and extend the term of Loan 80986601, did not make mention of: (1) any agreement by DEI to guaranty any third-party's debt, or (2) any loans from an entity called "Interstate Underground Storage" or its affiliates to DEI.

13.    Several months after executing the December 14, 2009, Promissory Note: Renewal Note and the December 14, 2009, Commercial Loan Agreement: Single Advance Loan, DEI failed to make certain interest payments due on Loan 80986601. Because DEI was in default on Loan 80986601 for failure to make interest payments, USB attempted to conduct a non-judicial foreclosure on certain real property pledged as collateral by DEI for Loan 8096601.

14.    On March 28, 2012, only days before the anticipated foreclosure sale, DEI filed its Chapter 11 petition with this Court.

15.    DEI filed certain schedules shortly after the filing of its Chapter 11 petition. Although DEI made financial representations in its submissions to USB that it held significant interests totaling $3,100,000 in several other entities, including Park Reserve LLC, The View LLC, and Indian Paint Brush, Inc., DEI's interests in those entities were not included in the bankruptcy schedules.

16.    After DEI filed its Chapter 11 petition in this case, DEI's President testified that Park Reserve LLC and The View LLC were transferred to an entity named "Interstate Underground Warehouse" in approximately December 2009. DEI's President has testified, *inter alia*, that these transfers were made in exchange for the forgiveness of loans by Interstate Underground Warehouse and its affiliates to DEI. Notably, both Jesse Warner (DEI's former President) and Wayne Reeder (DEI's current President) are affiliated with Interstate Underground Warehouse, and Mr. Reeder has sent communications to USB regarding Loan 8096601 on Interstate Underground Warehouse letterhead.

///

///

{7057/018/00365745.DOC }                           5

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT**

17.    In its financial representations to USB, DEI and its officers, including Jesse Warner, did not disclose to USB that DEI received any loans from an entity called Interstate Underground Warehouse and its affiliates, or that DEI was indebted to Interstate Underground Warehouse.  Nor did DEI disclose to USB that DEI intended to materially change its financial position by transferring approximately $3,100,000 of the assets it held, including Park Reserve LLC and The View LLC, to entities controlled by or affiliated with DEI's officers and/or relatives of DEI's officers.  Further, in the December 14, 2009, Commercial Loan Agreement: Single Advance Loan, DEI expressly represented and warranted to USB that: (1) "any financial statements that I provide you fairly represents my financial condition for the stated periods, is current, complete, true and accurate in all material respects, includes all of my direct or contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date the financial information was prepared"; (2) "I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations"; and (3) "I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities."

18.    DEI's Schedule F in this proceeding also shows an unsecured claim in the amount of $4,691,289.54 allegedly owed to CML-CA ONE, LLC as the result of a "Guarantee of Third Party's Loan Obligation."    According to the February 16, 2011, Complaint for Breach of Written Guaranty in the matter of *CML-CA One, LLC v. Desert Equipment, Inc.*, Riverside County Superior Court, Case No. RIC 1102640 (the "CML Action"), this debt is alleged to have arisen from a September 26, 2007, "Unconditional Guaranty" (executed by Jesse Warner) by DEI of a $4,000,000 loan to Indian Paint Brush. According to the complaint in the CML Action, DEI's alleged liability appears to have arisen as a result of Indian Paint Brush's nonpayment under its loan in early 2010.

19.    In its financial representations to USB, DEI and its officers, including Jesse Warner, did not disclose to USB that DEI had executed a guaranty of a $4,000,000 loan to Indian Paint Brush.  Nor did DEI and its officers, including Jesse Warner, disclose to USB

that Indian Paint Brush was insolvent, or was in danger of being unable to pay a $4,000,000 obligation. Rather, DEI expressly represented and warranted to USB that: (1) "I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations"; (2) "There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents"; and (3) "I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities." Further, DEI represented to USB that it held an interest in Indian Paint Brush worth approximately $280,000.

## FIRST CLAIM FOR RELIEF

### (For a Determination that the Debt Owed to USB is Not Dischargeable Pursuant to 11 U.S.C. § 523(a)(2)(A))

20.    USB hereby incorporates by reference Paragraphs 1 through 19 above, inclusive, as though set forth fully herein.

21.    11 U.S.C. 523(a)(2)(A) provides that a debt or an extension or renewal of credit is nondischargeable to the extent obtained by "false pretenses, a false representation, or actual fraud."

22.    Prior to the renewal, modification, and extension of the maturity date for the Loan 80986601, representatives and agents of DEI, including Jesse Warner, DEI's President at that time, and John S. Winchell, DEI's Certified Public Accountant, failed to disclose certain material facts to USB regarding DEI's financial state. These failures included, but were not limited to:

- The fact that DEI believed it had outstanding loans to Interstate Underground Storage (and its affiliates).
- The fact that DEI had agreed to guaranty a $4,000,000 loan to Indian Paint Brush in 2007.
- The fact that DEI's investment in Indian Paint Brush was worthless.

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT

23.    DEI knew the above financial representations made to USB were false, and DEI concealed the above facts from USB with the intention and purpose of deceiving USB, and inducing USB to extend, renew and modify the loan in December 2009.  This is shown by, *inter alia*, (1) the transfer of Park Reserve LLC and The View LLC from DEI to other entities occurred at approximately the same time the financial representations were made to USB; (2) Jesse Warner was involved in both the transfers of Park Reserve LLC and The View LLC, as well as the financial representations to USB; and (3) Indian Paint Brush stopped making payments on its $4,000,000 at approximately the same time or shortly after the financial representations were made to USB in December 2009.

24.    Prior to the renewal, modification, and extension of the maturity date for the Loan 80986601, representatives and agents of DEI, including Jesse Warner, DEI's President at that time, and John S. Winchell, DEI's CERTIFIED PUBLIC ACCOUNTANT, made certain financial representations to USB, including the submission of financial statements and other information relating to DEI's financial condition.  These representations included, but were not limited to:

- DEI held investments in several other entities totaling approximately $3,100,000.

- DEI held a 100% interest in an entity called Park Reserve LLC with a value of approximately $1,036,000.

- DEI held a 66.6% interest in an entity called The View LLC, and that the value of DEI's investment was worth approximately $1,284,000.

- DEI held an interest in an entity named Indian Paint Brush, Inc., and that the value of DEI's investment was worth approximately $280,000.

- DEI's representations that: (1) "any financial statements that I provide you fairly represents my financial condition for the stated periods, is current, complete, true and accurate in all material

respects, includes all of my direct Or contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date the financial information was prepared"; (2) "I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations"; (3) "There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents"; and (4) "I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities."

25.    At the time the above representations were made, DEI knew the above financial representations made to USB were false, and DEI concealed the above facts from USB with the intention and purpose of deceiving USB, and inducing USB to extend, renew and modify the loan in December 2009. This is shown by the fact that, at approximately the same time as Loan 80986601 was extended, DEI transferred its interest in Park Reserve LLC and The View LLC to Interstate Underground Warehouse (an entity affiliated with DEI's current and former officers), and concealed that transfer from USB. This is also shown by the fact that Indian Paint Brush stopped making payments on its $4,000,000 loan at approximately the same time or shortly after the financial representations were made to USB in December 2009.

26.    USB justifiably relied on the financial representations provided by DEI in agreeing to extend, renew, and modify Loan 80986601 because, *inter alia*, the financial information was provided by John S. Winchell, a Certified Public Accountant based in Kansas City, Missouri; DEI actively concealed its debt and the Indian Paint Brush transaction; and the fact that DEI's interest in Park Reserve LLC and The View LLC occurred at approximately the same time as the financial representations, and the representations in Paragraphs 4.K, 4.L, 4.M,

///

and 5.A of the December 14, 2009, Commercial Loan Agreement: Single Advance Loan were made.

27.    USB sustained losses as a proximate result of DEI's representations. Among other things, USB agreed to extend, modify, and renew Loan 80986601 as a result of DEI's misrepresentations, and was induced to decline to initiate collection efforts at that time. Had USB known the true facts, USB could have (1) demanded additional collateral from DEI for the extension; and (2) initiated legal proceedings against the guarantors.  DEI's actions have harmed USB because the value of the collateral has decreased; DEI transferred its interest in Park Reserve LLC and The View LLC to Interstate Underground Warehouse; and guarantors now have fewer assets than what was disclosed in their financial statements prior to USB's agreement to extend, modify, and renew Loan 80986601 in December 2009.

28.    For the foregoing reasons, DEI's liability to USB, in an amount to be determined, is not dischargeable under 11 U.S.C. § 523(a)(2)(A).

29.    The December 14, 2009, Commercial Loan Agreement: Single Advance Loan, as well as other loan agreements signed by DEI in connection with Loan 80986601, contains an attorneys' fees clause.  As a result of DEI's conduct, as alleged herein, USB has been forced to retain the services of the undersigned to enforce its rights under the loan agreements.  Therefore, in addition to all other relief sought, USB also seeks recovery of all attorneys' fees and costs incurred herein.

## SECOND CLAIM FOR RELIEF

**(For a Determination that the Debt Owed to USB is
Not Dischargeable Pursuant to 11 U.S.C. § 523(a)(2)(B))**

30.    USB hereby incorporates by reference Paragraphs 1 through 29 above, inclusive, as though set forth fully herein.

31.    11 U.S.C. 523(a)(2)(B) provides that money, property, services or an extension, renewal or refinancing of credit is nondischargeable to the extent obtained by use of a materially false statement in writing.

///

{7057/018/00365745.DOC }                          10

32.    Prior to the renewal, modification, and extension of the maturity date for the Loan 80986601, representatives and agents of DEI, including Jesse Warner, DEI's President at that time, and John S. Winchell, DEI's CERTIFIED PUBLIC ACCOUNTANT, failed to disclose certain material facts regarding DEI's financial state.    These failures included, but were not limited to:

- The fact that DEI believed it had outstanding loans to Interstate Underground Storage (and its affiliates).
- The fact that DEI had agreed to guaranty a $4,000,000 loan to Indian Paint Brush in 2007.
- The fact that DEI's investment in Indian Paint Brush was worthless.

33.    DEI knew the written financial representations made to USB were false, and DEI concealed the above facts from USB with the intention and purpose of deceiving USB, and inducing USB to extend, renew and modify the loan in December 2009.  This is shown by, *inter alia*, (1) the transfer of Park Reserve LLC and The View LLC from DEI to other entities occurred at approximately the same time the financial representations were made to USB; (2) Jesse Warner was involved in both the transfers of Park Reserve LLC and The View LLC, as well as the financial representations to USB; and (3) Indian Paint Brush stopped making payments on its $4,000,000 at approximately the same time or shortly after the financial representations were made to USB in December 2009.

34.    Prior to the renewal, modification, and extension of the maturity date for the Loan 80986601, representatives and agents of DEI, including Jesse Warner, DEI's President at that time, and John S. Winchell, DEI's CERTIFIED PUBLIC ACCOUNTANT, made certain financial representations to USB, including the submission of financial statements and other information relating to DEI's financial condition.  These representations included, but were not limited to:

- DEI held investments in several other entities totaling approximately $3,100,000.

{7057/018/00365745.DOC }    11

- DEI held a 100% interest in an entity called Park Reserve LLC with a value of approximately $1,036,000.

- DEI held a 66.6% interest in an entity called The View LLC, and that the value of DEI's investment was worth approximately $1,284,000.

- DEI held an interest in an entity named Indian Paint Brush, Inc., and that the value of DEI's investment was worth approximately $280,000.

- DEI's representations that: (1) "any financial statements that I provide you fairly represents my financial condition for the stated periods, is current, complete, true and accurate in all material respects, includes all of my direct Or contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date the financial information was prepared"; (2) "I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations"; (3) "There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents"; and (4) "I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities."

35.    At the time the above written representations were made, DEI knew the above financial representations made to USB were false, and DEI concealed the above facts from USB with the intention and purpose of deceiving USB, and inducing USB to extend, renew and modify the loan in December 2009. This is shown by the fact that, at approximately the same time as Loan 80986601 was extended, DEI transferred its interest in Park Reserve

1  LLC and The View LLC to Interstate Underground Warehouse (an entity affiliated with DEI's
2  current and former officers), and concealed that transfer from USB. This is also shown by the
3  fact that Indian Paint Brush stopped making payments on its $4,000,000 loan at approximately
4  the same time or shortly after the financial representations were made to USB in December
5  2009.

6      36.    USB justifiably relied on the written financial representations provided
7  by DEI in agreeing to extend, renew, and modify Loan 80986601 because, *inter alia*, the
8  financial information was provided by John S. Winchell, a Certified Public Accountant based
9  in Kansas City, Missouri; DEI actively concealed its debt and the Indian Paint Brush
10 transaction; and the fact that DEI's interest in Park Reserve LLC and The View LLC occurred
11 at approximately the same time as the financial representations, and the representations in
12 Paragraphs 4.K, 4.L, 4.M, and 5.A of the December 14, 2009, Commercial Loan Agreement:
13 Single Advance Loan, were made.

14     37.    USB sustained losses as a proximate result of DEI's representations.
15 Among other things, USB agreed to extend, modify, and renew Loan 80986601 as a result of
16 DEI's misrepresentations, and was induced to decline to initiate collection efforts at that time.
17 Had USB known the true facts, USB could have (1) demanded additional collateral from DEI
18 for the extension; and (2) initiated legal proceedings against the guarantors. DEI's actions
19 have harmed USB because the value of the collateral has decreased; and DEI transferred its
20 interest in Park Reserve LLC and The View LLC to Interstate Underground Warehouse. DEI's
21 also declined to pursue collection remedies at that time, which are now worthless and/or
22 substantially decreased in value because DEI has transferred its interest in Park Reserve LLC
23 and The View LLC to Interstate Underground Warehouse, and several of the guarantors' assets
24 are now substantially lower than what was reported to USB before it agreed to extend, modify,
25 and renew Loan 80986601.

26     38.    For the foregoing reasons, DEI's liability to USB, in an amount to be
27 determined, is not dischargeable under 11 U.S.C. § 523(a)(2)(B).

28 ///

39.    The December 14, 2009, Commercial Loan Agreement: Single Advance Loan, as well as other loan agreements signed by DEI in connection with Loan 80986601, contains an attorneys' fees clause.  As a result of DEI's conduct, as alleged herein, USB has been forced to retain the services of the undersigned to enforce its rights under the loan agreements.  Therefore, in addition to all other relief sought, USB also seeks recovery of all attorneys' fees and costs incurred herein.

## PRAYER

**WHEREFORE** USB respectfully requests that the Court enter judgment against DEI as follows:

(a)    declaring that DEI's indebtedness to USB, in an amount to be determined, is a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A) or 11 U.S.C. § 523(a)(2)(B);

(b)    granting a non-dischargeable judgment in favor of USB against DEI, in an amount to be determined, including without limitation, pre-judgment and post-judgment interest as provided by law;

(c)    For attorneys' fees and costs of suit incurred herein;

(d)    For any such other and further relief to which USB may be entitled in this proceeding.

DATED: June 28, 2012                    WANGER JONES HELSLEY PC

By _____
for    John P. Kinsey,
      Attorneys for Plaintiff
      United Security Bank

{7057/018/00365745.DOC }                        14

COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT

 

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | AGREEMENT DATE | INITIALS |
|---|---|---|---|---|
| 80986601 | Desert Equipment, Inc. | 4401041 | 08/14/06 | RD |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $4,797,000.00 | United Security Bank Reference Rate plus 1.250% | 9.500% | 08/05/08 | Commercial |
| | | **Creditor Use Only** | | |

# CONSTRUCTION LOAN AGREEMENT
### For Project Indian Palms Country Club
### Construction Loan

**DATE AND PARTIES.** The date of this Construction Loan Agreement (Agreement) is August 14, 2006. The parties and their addresses are:

**CONSTRUCTION LENDER:**
UNITED SECURITY BANK
Bakersfield Office
1525 E. Shaw Avenue, Ste. 100
Fresno, California 93710

**BORROWER:**
DESERT EQUIPMENT, INC.
a California Corporation
1830 Brundage Lane, Suite A
Bakersfield, California 93304

**OWNER:**
DESERT EQUIPMENT, INC.
A California Corporation
1830 Brundage Lane, Suite A
Bakersfield, California 93304

**1. DEFINITIONS.** All references to dollar amounts refer to amounts in lawful money of the United States of America. For the purposes of this Agreement, the following words will be defined as indicated.

**A. Agreement.** This Agreement is this Construction Loan Agreement and any attached exhibits and schedules, and their amendments.

**B. Completion Date.** By the Project's Completion Date of July  5,  2008 I will complete or cause to be completed: the Project's development and construction; the installation of all fixtures and equipment that are required for the operation of the Property; and at your request for any or all leases, the tenants' execution of letters of acceptance for possession of their leased premises.

**C. Construction Contract.** The Construction Contract includes all contracts between me and the Project's general contractor, and any subcontractors, laborers, material suppliers and others contributing work, equipment or materials to the Project.

**D. Construction Liens.** Construction Liens include any notices or claims created by statutes for the purpose of securing priority of payment of the price or value of labor or work performed and materials supplied in the Project's development, construction and equipping and that attaches to the Property and the Project, or any notices or claims to withhold funds related to the Loan. Construction Liens include without limitation mechanic's liens, materialmen liens, construction liens and all similar statutory liens.

**EXHIBIT A**

**E. Title Insurance Policy.** The Title Insurance Policy is the ALTA Extended Coverage Loan Policy form, revised to the most recent date, and any endorsements that you require.

**F. Disbursement Schedule.** The Disbursement Schedule provides a schedule of the amounts and the dates for each Loan advance, subject to this Agreement's terms and conditions. The Disbursement Schedule is incorporated by reference into this Agreement.

**G. Environmental Law.** Environmental Law includes without limitation the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), the Hazardous Materials Transportation Act, and the Resource Conservation and Recovery Act, and all federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a Hazardous Substance.

**H. Hazardous Substance.** A Hazardous Substance is any toxic, radioactive, ignitable, corrosive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to health, safety, welfare or the environment if such substance is or becomes regulated by any federal, state, or local law, regulation or ordinance. The term includes without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any environmental law.

**I. Improvements.** Improvements include all existing physical development of the Property, all buildings or other structures on the Property and all of the Project's future improvements and construction, except for any demolition as specified in the Plans and Specifications.

**J. Loan.** The Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction. Under the Loan, Borrower may obtain advances from you up to the total principal amount of $4,797,000.00, subject to this Agreement's conditions and terms.

**K. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**L. Plans and Specifications.** The Plans and Specifications include the Project's plans, specifications and drawings, with the certifications, any studies, data, working or shop drawings, any models, any contracts or agreements, and any changes and additions made concerning these plans, specifications, models and drawings.

**M. Project.** As set forth in the Plans and Specifications, the Project includes all future physical development of the Property and offsite improvements as well as construction on the Property, except for any planned demolition. The Project also includes any furniture, furnishings, fixtures, or equipment when required in any Commitment, the Plans and Specifications, or any leases required by any Commitment. If all or part of these improvements will add or alter existing improvements, then the Project also includes the addition or alteration. Physical development of the Property will include without limitation grading, landscaping, and installation of streets, sidewalks, utility lines, drainage, hydrants, retention basins, and similar physical improvement of the land. Construction on the Property will include without limitation buildings, structures, fixtures, additions and alterations, and similar construction on the Property.

**N. Promissory Note.** The Promissory Note includes any note or notes or other written and executed evidence of the borrower's and co-signer's promise to pay you for debts, liabilities and obligations that are extended under the Loan and any riders, extensions, renewals, modifications, substitutions and amendments thereto.

**O. Pronouns.** "I", "me" and "my" refers to Borrower and every person, individually or together, who signs the Promissory Note, evidencing my promise to pay you for credit extended subject to this Agreement, any riders, extensions, renewals, amendments and modifications, and to Owner and every person, individually or together, who owns the Property on which the Project's development, construction and equipping will occur. "You" and "your" refers to the construction lender.

**P. Property.** Property includes all of the real property on which this Project will occur. The Property is located in Riverside County at NW corner of Odium Dr. and Barrymore St., Indio, California 92201, and is legally described as:

See Exhibit "A attached hereto and made a part hereof.



 

**Q. Security Agreement.** The Security Agreement includes any agreement which creates or provides for an interest in personal property or fixtures which is used to secure payment or performance of an obligation owed to you.

**R. Security Instrument.** The Security Instrument includes a mortgage, deed of trust, deed to secure debt or other similar instrument that transfers an interest in real estate for the purpose of securing repayment and performance of the Loan.

**S. Title Insurance Company.** Under the Loan, Alliance Title Company will serve as the Title Insurance Company.

**2. OBLIGATORY LOAN ADVANCES.** In consideration of my agreement to construct and complete the improvements described herein, you are obligated to open the Loan and to disburse advances up to the total principal amount of $4,797,000.00, as long as I have complied with all conditions precedent required for each advance.

**3. TITLE.** Owner has or will acquire a good and marketable fee simple ownership or a leasehold interest in the Property.

**4. TERM.** This Agreement will remain effective until I fully perform all of the Loan's debts, liabilities and obligations and you end this Agreement in writing.

**5. ARCHITECTS AND GENERAL CONTRACTOR.** The Project's architects and professional engineers exclude your consulting architect. You will choose your consulting architect, an independent architect, professional engineer or other construction consultant to periodically inspect the Project's progress and quality to protect your interests exclusively. The Project's general contractor is Robert L. Means .

**6. SECURITY.** I hereby transfer, assign and grant to you all of my right, title and interest in and to all of the following property as security for the Loan:

**A. Utility Deposits.** All amounts deposited with any public or private utility for utilities installation or service on or for the Property.

**B. Fixtures.** All construction materials, machinery and appliances acquired with Loan reserves or proceeds.

**C. Plans and Specifications.** The Project's Plans and Specifications.

**D. Account.** Any deposit account created under this Agreement and on any amounts placed in such account.

**E. Construction Contract.** The Construction Contract and the General Contractor's Consent and Acknowledgment. The General Contractor's Consent and Acknowledgment includes the Project general contractor's consent to and acknowledgment of the terms and conditions of this Agreement; representations about the Construction Contract, the Plans and Specifications, and the Project's budget; the general contractor's agreement to continue to perform general contractor's Construction Contract with you after my default; subordination to you of all claims, liens and encumbrances that general contractor has or will acquire in the Property; and agreement to other terms.

**F. Architect's Contract.** The contract with the Project's architect and professional engineers and the Architect's Consent and Acknowledgment, which includes the Architect's consent to and acknowledgment of the terms and conditions of this Agreement; representations about the Architect's contract, the Plans and Specifications, and the Project's budget; subordination to you of all claims, liens and encumbrances that Architect has or will acquire in the Property; the Architect's agreement to continue to perform its Architect's contract with you after my default; and agreement to other terms.

**G. Other Agreements.** Any other agreement which, in your sole judgment, would assist you in completing the Project should I be in default under the Loan.

**H. Other Collateral.** To the extent possible under state law in any and all government licenses, permits and approvals necessary for the Project. In addition, any and all other collateral described in any other Loan Document.

**7. CONDITIONS PRECEDENT TO FIRST LOAN DISBURSEMENT.** You will open the Loan and disburse or at your option, the Title Insurance Company disburses, the Loan's first advance only after I comply with all of the following conditions on or before August 14, 2006.

**A. Other Loan Documents.** I will execute the other Loan Documents and provide you with all other documents, information and warranties that you request. I will provide these in a form, a substance and with an execution acceptable to you.

**B. Record Security Instrument.** I will not permit any work or any materials to be furnished for the Project until you properly perfect or otherwise make effective as to third parties any security interests, assignments or other consensual liens or encumbrances.

**C. Title Insurance.** I will have furnished to you a title insurance commitment, interim binder or a Title Insurance Policy, acceptable to you, from the Title Insurance Company. I will also furnish any title insurance statements and other instruction or documents required by Title Insurance Company for the issuance of the title insurance commitments, interim binders, and Title Insurance Policy. The Title Insurance Policy will insure your lien on the Property and all appurtenant easements required by this Agreement against all defects, other liens, encumbrances and exceptions except those you approve in writing and the Title Insurance Policy's customary objections and exceptions that will be cured by the Project's completion and the final disbursement.

**D. Builder's Risk and Casualty Insurance.** I will obtain builder's risk insurance, with a coverage, a form and an amount acceptable to you and as required by the Construction Contract, insuring the Improvements under construction against loss or damage by fire or other casualty. This builder's risk insurance will provide for extended coverage, coverage against collapse, all risk course of construction coverage and other hazards reasonably required by you to be insured. After completing construction, this builder's risk insurance will convert to a casualty insurance in the amount of the Improvements' replacement cost. This builder's risk insurance policy will name you as a loss payee in a standard mortgage clause or provide for a similar endorsement. This builder's risk insurance policy will provide that coverages will not be canceled or diminished without at least 10 days prior written notice to you. I will also provide flood insurance and earthquake insurance when required by you or by applicable law.

**E. Permits; Compliance with Laws.** I will furnish copies of all completed governmental building permits, approvals, consents and other licenses required for the Project's construction under the Plans and Specifications, including any offsite improvements. At your request, these copies will be certified. I also will have furnished evidence that the Project's Plans and Specifications will fully comply with all zoning and building code laws, environmental laws and any other covenants and restrictions.

**F. Assignment of Contracts.** I will provide you with the Architect's Consent and Acknowledgment and the General Contractor's Consent and Acknowledgment.

**G. Liability Insurance.** I will furnish certificates from the Project's general contractor and subcontractors that evidence workers' compensation and liability insurance, including contractual liability, for the course of Project's development, construction, and equipment and that names you as additional insured. The liability insurance limits for death of or injury to persons will be $1,000,000.00 or more. The liability insurance limits for property damage will be $1,000,000.00 or more. Workers compensation insurance limits will be $1,000,000.00 or more. On your request, I will obtain general public liability insurance naming you as an additional insured and in an amount acceptable to you. My general public liability insurance policy will contain a standard non-contribution mortgagee's loss payable endorsement for you.

**H. Surety Bonds.** At your request, I will have furnished from a surety licensed to do business in the state where the Property is located, acceptable to you, and that names you and I as joint and several obligees, performance bonds for all contractors, labor and material payment bonds, and a completion bond. I will also arrange to have the performance and payment bonds name the Project's general contractor as the principal and you as the obligee or co-beneficiary. Each bond will be for the amount of the contract or more. I will arrange for these bonds to be executed by the same surety, unless you permit otherwise in writing. The bonds and any notice of commencement of construction will be duly recorded, when required by law, in the real property records of the county, district or parish where the Property is located. I will arrange to have the bond terms require that the contractor give notice to you of my default under the Construction Contract and give you an opportunity to cure this default.

**I. Project Budget.** I will obtain your approval of the Project's budget, detailing all of the costs for any acquisition, development, construction, equipping and furnishing of the Property, and a schedule or a cash flow statement that estimates the amount and the time of each Loan advance.

**J. Plans and Specifications.** I will furnish a complete copy of Plans and Specifications that set forth all of the Project's improvements and construction and contains the Project architect's or professional engineer's certification. The Project's architect or professional engineer will provide a certified statement that the Plans and Specifications comply with all applicable laws and ordinances as well as the requirements of any leases to be assigned to you. The Project architect's or professional engineer's certified statement will also state that the Plans and Specifications are complete and contain sufficient detail that any buildings will be ready for

 

occupancy when built by the Plans and Specifications. I will also obtain written approval of the Plans and Specifications from you and all tenants under any leases assigned to you.

**K. Project's Contracts.** I will provide you with a list of all the contracts I have made for the Project. On your request, I will provide you copies of contracts. I will provide you with any other information that you require to estimate the Project's cost. If you decide that these contracts, subcontracts and purchase orders do not include all of the labor and materials required to complete the Project's development and construction, then upon written notice from you, I will obtain firm bids or estimates for the excluded labor and materials.

**L. Soil Test.** I will obtain your approval of my licensed soil engineer's report of the Property's soil and drainage.

**M. No Environmental Problems.** I will have furnished to you a preliminary environmental report from an environmental engineer satisfactory to you. At your request, this report will be updated as circumstances may warrant.

**N. No Pending Lawsuits or Claims.** I will furnish evidence satisfactory to you that no litigation or proceedings are pending or threatened against me or the Project's general contractor that could affect the validity or priority of the Security Instrument's lien or affect my ability to perform this Agreement, the Construction Contract, and my obligations under any leases.

**O. Authority And Power.** When applicable, I will have furnished my attorney's opinion, satisfactory to you that all of the following are true:

    (1) I am duly organized, validly existing, and in good standing in the state of my incorporation or organization and in the state or district where the Property is located.

    (2) I have the power and authority to execute and perform this Agreement and all of the other Loan Documents requiring my execution and performance.

**P. Property's Restrictions.** I will furnish you with a copy of all covenants, conditions and restrictions applicable to the Property now or on the Project's completion and you accept these covenants, conditions and restrictions.

**Q. Additional Requirements.** I will furnish any additional documents and evidence that you require.

**R. Additional Disbursement Condition.** I agree that before funds are disbursed, there will be written and/or verbal confirmation, that the Deed of Trust has been recorded.

**S. Agreement Termination.** You may end this Agreement on September 14, 2006 if I have not performed all of the conditions precedent to the first disbursement of Loan reserves and proceeds and begun construction of the Project on or before this date.

**8. CONDITIONS PRECEDENT TO ALL LOAN DISBURSEMENTS.** The following conditions will be complied with before you disburse , or at your option, the Title Insurance Company disburses, any Loan reserves and proceeds.

**A. Construction Escrow Agreement.** At your request, you and I will enter into a construction escrow agreement with the Title Insurance Company directing the Title Insurance Company, rather than you, to make Loan disbursements after I satisfy this Agreement's disbursement conditions to its satisfaction. The Title Insurance Company will determine the form of the escrow agreement. I will comply with the escrow agreement's terms and conditions to the extent they do not contradict this Agreement. I agree to pay the fees, costs and expenses that Title Insurance Company charges for its services under the construction escrow agreement.

**B. Payments.** I will make timely payments of any amounts due and payable under the Loan.

**C. Survey.** At your request, I will furnish you with a survey plat of the Property of recent date, prepared and certified by a licensed surveyor or prepared by a licensed professional engineer and certified by a licensed surveyor.

**D. Inspection.** At your sole discretion, you, your consulting architect or your agent will have inspected the project and have found that the project at that time reflects good quality work and materials, complies with the plan and specification and completes that construction stage. You are under no obligation to supervise, inspect or inform me of the progress of construction, and I will not rely upon you therefor. You will incur no liability or obligation to me arising out of such inspection. All your inspections and approvals are solely for your own benefit and may not be relied upon by any third party.

**E. No Default Declared.** I have not received written notice from you that a default under this Agreement or any of the Loan Documents has occurred.

©1996 Bankers Systems, Inc., St. Cloud, MN Express<sup>®</sup>
Initials ___ 
Page 5

**F. No Waiver.** Your acquiescence to my failure to comply with any condition of any Loan disbursement does not waive my need to comply with this condition, so you may require my compliance with this condition at any time after your acquiescence.

**G. Documents Furnished.** Before each disbursement of the Loan reserves and proceeds, I will furnish or cause to be furnished to you (or the Title Insurance Company when they are making the disbursements) the following documents.

(1) **Application For Disbursement.** I will provide you with a properly executed standard American Institute of Architect's payment request form (or another form you approve) and any supporting evidence that you require before disbursing Loan reserves and proceeds. I will only apply for a disbursement for work actually done and materials actually incorporated in the Project. My requests are my certification that all of the request's contents are true, complete and correct as of the request's date.

(2) **Certification.** At your request, I will have furnished to you a certification by the Project's architect or another qualified inspector acceptable to you that the Project's development, construction and equipping has complied and will continue to comply with all applicable laws.

(3) **Verification Of Contracts.** At your request, I will provide you a sworn statement as to the contract amounts due to the Project's architect, professional engineers, contractors and material suppliers for all of their work and labor performed, equipment and materials supplied to a reasonably current and specified date. You may require each listed person's verification before making any disbursements. If my list of all contracts that I have made for the Project has changed, then I will provide you with written statement advising you of the changes. I will provide you with a written statement advising you that no changes have occurred, when my list of all contracts has not changed.

(4) **Lien Waivers and Subordinations.** I will supply you with waivers or releases of Construction Liens as well as lien subordinations or disclaimers from Project fixture and equipment suppliers that satisfy your requirements and applicable law. I will also supply you with any supporting data that you request from those benefiting from the disbursement. Also, I must provide you with satisfactory evidence that either: all claims for Construction Liens for any Site Improvements have been paid, or the time for recording these claims has expired and no claims of this kind have been recorded; or I have procured and properly recorded a payment bond amounting to 50 percent or more of the principal amount of the Promissory Note.

(5) **Disbursement Requirements.** I will furnish any other documentation that is requested by whomever is administering the disbursements.

(6) **Title Insurance Documentation.** I will furnish other documentation that the Title Insurance Company requires when it is administering the disbursements.

**H. Additional Disbursement Condition.** I will provide you with a satisfactory progress inspection by a Lender approved inspector. I will also provide you with an ALTA Lenders extended coverage policy of title insurance with such endorsement as you may require, issued by a title insurance company acceptable to you and in a form, amount, and content satisfactory to you, insuring or agreeing to insure that Lenders Mortgage or Deed of Trust on the Property is or will be upon recordation a valid first lien on the Property free and clear of all defects, liens, encumbrances, and exceptions except those as specifically accepted by you in writing. If requested by you, I will provide to you, at my expense, a foundation endorsement (CLTA 102.5 or its equivalent) to the title policy upon the completion of each foundation for the Improvements, showing no encroachments, and upon completion an endorsement which insures the lien-free completion of the Improvements (CLTA 101 series, as required by you). Specifically, I will provide to you the following title insurance endorsements: 100, 111.5 and 116.

**9. CONDITIONS PRECEDENT TO THE FINAL LOAN DISBURSEMENT.** You or at your option, the Title Insurance Company, will make the final disbursement of the Loan reserves and proceeds, except for any undisbursed Loan proceeds or reserves allocated for tenant improvements, after I furnish or cause to be furnished the following to your satisfaction.

**A. Certifications and Lien Waivers.** After fully completing and equipping the Project, I will supply you with sworn statements, certifications and final unconditional waivers or releases of Construction Liens from the Project's general contractor, subcontractors and material suppliers. These sworn statements, certifications and final unconditional waivers or releases will satisfy your requirements and applicable law. I will also supply you with any supporting data that you request from those benefiting from Loan disbursements.

Desert Equipment, Inc.
California Construction Loan Agreement
CA/4mtraeger00937100005188022081406Y
©1996 Bankers Systems, Inc., St. Cloud, MN ExGere®
Initials
Page 6

 

**B. Certificate of Occupancy or Completion.** I will provide you with a copy of the certificate of occupancy, completion or other satisfactory written confirmation that the Project is complete and any structures are ready for occupancy. You will also receive satisfactory evidence that all utilities are available at the Improvements and all connection fees are paid.

**C. Title Insurance.** I will provide you with the Title Insurance Company's final endorsement to the Title Insurance Policy as you require at your sole discretion, and a Title Insurance Policy will be issued for the face amount of the Promissory Note, free of all exceptions and objections.

**D. Property Insurance Policy.** I will provide you with evidence that an insurance policy has been obtained for the Property and its Improvements that provides fire and extended coverage for replacement cost of the Improvements, with a Lender's loss payable endorsement.

**E. Taxes and Insurance.** I will have made all tax and insurance deposits, if any, required by the Security Instrument.

**F. As-Built Plans and Specifications.** I will furnish you a full and complete certified set of "as built" Plans and Specifications.

**G. All Other Requirements.** I will comply with all other requirements of this Agreement.

**H. Free of Liens.** All fixtures and equipment required for the operation of the Property are installed and are free and clear of all liens and security interests.

**I. Tenant Certificates.** At your request, you will receive from each tenant, if any, an estoppel certificate and an executed acknowledgment of their acceptance of their real estate leasehold interest in all or part of the Property. Each certificate will be in writing and its form and substance will be satisfactory to you.

**J. Additional Disbursement Condition.** Recording of Notice of Completion and receipt of final lien free title endorsement.

**10. RESERVES AND DEPOSITS.** You may set aside and reserve Loan proceeds for Loan interest, fees and expenses, taxes and insurance. I agree that you may set aside a reserve in the sum of $877,251.00 for interest to be paid on the Loan.

**A. Reserves.** Interest will accrue on any reserve Loan proceeds. Disbursement of reserves is disbursement of the Loan's proceeds. You will disburse the reserves for the purpose they were set aside for, as long as I am not in default under this Agreement and the undisbursed Loan reserves and proceeds cover or exceed your estimated cost for completing the Project. You may directly pay these reserved items, reimburse me for payments I made, or reduce the reserves and increase the Loan proceeds available for disbursement.

**B. Deposits.** You may also require me to deposit with you amounts needed to finish the Project, including any installation of any required fixtures and equipment, when the Loan's undisbursed proceeds and reserves are less than your estimated cost for completing the Project. You make these estimates solely to protect your interests. You will provide me with a written request for a deposit with supporting documentation of your estimate, which is final and conclusive, and I will deposit this deficiency as soon as you request. You may apply the amounts that I deposit with you to cure any default or to reimburse yourself for payments that you made on my behalf.

**C. Account.** You may establish a non-interest bearing account for any reserved Loan proceeds and amounts I am required to deposit with you.

**11. DISBURSING LOAN PROCEEDS.** Disbursement of Loan reserves and proceeds will be subject to the following terms and conditions.

**A. Disbursement Schedule.** You will disburse the Loan reserves and proceeds to yourself for reimbursements of fees, costs and expenses that you advance for me and to me as indicated in the Disbursement Schedule and subject to the conditions precedent under this Agreement.

**B. Payments.** You may make advances payable to me or jointly to me and Project's general contractor, the subcontractors or the material suppliers for amounts due under the Construction Contract. Alternatively, you may make payments for the Project's construction costs directly to any contractor, subcontractor, material supplier; this power is coupled with an interest that makes it irrevocable and survives my default. Any disbursement may be deposited into an account established by me or another payee entitled to payment under the Construction Contract. You may also pay yourself for amounts I owe you or you pay others. I will receive and hold advances made payable to me in trust to be applied first to paying the cost of Improvements before any other purpose.

**C. Fees and Expenses.** I will pay all fees, costs and expenses relating to the Loan's closing before or at the time of the first disbursement of Loan reserves and proceeds or at another time that you specify. I may pay these fees and expenses in cash by a cashiers check or request that the amount due for these fees and expenses be disbursed to you from the Loan's proceeds. Any fees, costs and expenses that you advance or incur on my behalf become a part of the Loan's debt and secured by the Property, even when these amounts and the Loan disbursements exceed the face amount of the Note.

**D. Your Right to Advance Funds.** You may (but are not required to) advance amounts to cure any default and these advances will become a part of the Loan's debt and secured by the Property, even when these amounts and the Loan disbursements exceed the face amount of the Note.

**E. Additional Disbursement Term.** All disbursements may be subject to the Disbursement Schedule, which may, in turn, refer to a plan referred to as an Exhibit B attached hereto and made a part hereof.

**12. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Agreement is in effect, except when this Agreement provides otherwise.

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Agreement and the obligation evidenced by this Agreement are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

**C. Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**D. Ownership or Lease of Property.** I have the power and authority to own, develop, construct and equip the Property.

**E. Validity.** The execution and performance of this Agreement and other Loan Documents is not and will not cause a default under any other agreement binding or affecting me, or a violation of any law or court order that may affect the Property or the Property's planned usage. I represent and warrant that the copy of the Project architect's contract and the Construction Contract that I provide you are true, correct and complete copies and that they are not subject to any claim, setoff or encumbrance.

**F. Legal Assurances.** I am not in violation of any law or any order from a court or any other type of governmental unit that may affect my ability to perform this Agreement or that may affect the validity or priority of your lien on the Property.

No lawsuits or other proceedings are pending or threatened against me, the Project's general contractor or the Property that may adversely affect your lien on the Property, my ability to perform this Agreement or the Construction Contracts or any leases required under the Loan, except those already disclosed to and acknowledged by you in writing.

**G. Accuracy of Information.** All financial statements, other information or certifications furnished by me to you are true, complete and correct as of the date made, and do not misstate or omit any fact necessary to avoid being misleading.

**H. Project Budget.** The Project's budget that I submitted to you accurately and completely reflects all costs which I reasonably expect to incur in the acquisition, development, construction, equipping and furnishing of the Property and the Project. I will prevent the Project's actual cost from exceeding the Project's budgeted cost.

**I. Utility Services.** All necessary utility services are available or can be brought into the Property without extra cost, except as the final cost breakdown that I submitted to you provides. Utility services are necessary if required to construct and operate the improvements for their intended purposes. I have obtained all easements authorizing installation of these off-site utilities.

**J. Environmental Representations, Warranties and Agreements.** I represent, warrant and agree to the following:


Initials
Page 8

 

**(1)** Except as previously disclosed and acknowledged in writing to you, no Hazardous Substance has been, is or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

**(2)** Except as previously disclosed and acknowledged in writing to you, I have not and will not cause, contribute to or permit the release of any Hazardous Substance on the Property.

**(3)** I will immediately notify you if one or more of the following occur:

    **(a)** A release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property.

    **(b)** There is a violation of any Environmental Law concerning the Property; in such an event, I will take all necessary remedial action in accordance with any Environmental Law.

**(4)** Except as previously disclosed and acknowledged in writing to you, I have no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to one or more of the following:

    **(a)** Any Hazardous Substance located on, under or about the Property. .

    **(b)** Any violation by me or any tenant (or landlord) of any Environmental Law. I will immediately notify you in writing as soon as I have reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, you have the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

**(5)** Except as previously disclosed and acknowledged in writing to you, I and every tenant (or landlord) have been, are and will remain in full compliance with any applicable Environmental Law.

**(6)** Except as previously disclosed and acknowledged to you in writing, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added, unless you first agree in writing.

**(7)** I will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

**(8)** I will permit, or cause any tenant (or landlord) to permit, you or your agent to enter and inspect the Property and review all records at any reasonable time to determine all of the following:

    . **(a)** The existence, location and nature of any Hazardous Substance on, under or about the Property.

    **(b)** The existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property.

    **(c)** Whether or not I and any tenant (or landlord) are in compliance with any applicable Environmental Law.

    **(d)** Upon your request, I agree, at my expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to you. The choice of the environmental engineer who will perform such audit is subject to your approval.

**(9)** You have the right, but not the obligation, to perform any of my obligations under this subsection at my expense.

**(10)** As a consequence of any breach of any representation, warranty or promise made in this subsection, all of the following applies:

    **(a)** I will indemnify and hold you and your successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and reasonable attorneys' fees to the extent not prohibited by law which you and your successors or assigns may sustain.

    **(b)** At your discretion, you may release the Security Instrument and in return I will provide you with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of your rights under this Security Instrument.

**(11)** Despite any of the language contained in the Security Instrument to the contrary, the terms of this subsection will survive any foreclosure or enforcement of the lien or satisfaction of any Security Instrument

©1996 Bankers Systems, Inc., St. Cloud, MN ExpереⁿΞ

Initials _____

Page 9

regardless of any passage of title to you or any disposition by you of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

**K. Additional Representation or Warranty.** This statement refers to Paragraph 2 and adds to it, the following sentence: I will try, to the best of my ability, to prevent any overruns, although if they occur, I will fund them.

**13. AGREEMENTS.** Until the Loan and all related debts, liabilities and obligations are paid and discharged, I will comply with the following terms, unless you waive compliance in writing.

**A. Contractors and Suppliers.** I will ensure that the Project uses contractors, subcontractors and material suppliers that you regard as financially sound and qualified.

**B. Material Suppliers' Liens.** I will seek your prior approval before permitting the purchase and installation of any fixtures or personal property on the Property, when the material suppliers reserve title, the right to remove or repossess, or the right to consider such items as personal property after these are incorporated into the Improvements.

**C. Construction Liens.** I will not permit any Construction Lien relating to the Project to be filed, recorded or asserted against the Property, any appurtenant interest or right, any account created under this Agreement or any funds due to the Project's general contractor. Within 10 days after any Construction Liens are filed, recorded or asserted, I will diligently dispute their validity or promptly procure their discharge or release by providing security or indemnity sufficient to either release the Construction Lien or obtain title insurance insuring against all Construction Liens; you may act on my behalf in this manner when I fail to do so. You need not inquire into the validity or amount of these Construction Liens when settling, compromising, discharging or releasing these Construction Liens. I will pay all of your costs, expenses and reasonable attorney's fees for obtaining the discharge or release of these Construction Liens. You may opt to recover these items on demand from me, from any account created under this Agreement, or treat your payment as an advance and disbursement under the Promissory Note.

**D. Indemnity.** I will defend, indemnify and hold harmless you, your agents, successors and assigns for anything that anyone, other than you or your agents, do or fail to do under or about the Property. I will defend you against all claims, demand, cleanup response and remediation requirements that result from these actions or omissions. This includes without limitation losses, punitive and compensatory damages, expenses, costs and attorneys' fees, and liability resulting from a finding that you, your agents, successors and assigns and I are engaged in a joint venture or partnership. My duty continues after the Loan's debts, liabilities and obligations are paid and discharged until your interest in the Property has ended.

**E. No Third Party Beneficiary Rights.** You and I do not intend to create any third-party beneficiary rights under this Agreement. No one other than me will have any right to obtain or compel a disbursement of the Loan's reserves or proceeds.

**F. Right to Assign.** I will not assign or attempt to assign my rights under this Agreement. An attempted assignment in violation of this agreement will not vest any rights in the purported assignee. You may assign, negotiate, pledge or transfer the Promissory Note, the Security Instrument and other Loan Documents to anyone to secure a Loan from them to you.

**G. Inspection.** I will help you or your consulting architect or other representatives to enter onto the Property and inspect the quality and progress of the Project's performance, labor and materials. I will promptly comply with your requirements to remove any dissatisfaction about the Project's quality or progress.

**H. Publicity.** I agree that you may display a sign at the construction site informing the public that you are the construction lender for the Project. I will provide you with the opportunity to participate in any other favorable publicity opportunities with the Project, like mentioning your role in press releases and providing you with the opportunity to participate in the ground-breaking, opening ceremonies and other similar events.

**I. Construction.** I will cause the Project's development, construction and equipping and any offsite development to be done diligently, continuously, on time, with high quality labor and materials and strictly by the Plans and Specifications. I will cause the Project development, construction and equipping to begin on September 14, 2006 and to be fully completed no later than July 5, 2008. On this completion date, for any leased premises I will have obtained all tenants' executed letters of acceptance of possession for their leased premises.

**J. Change Orders.** The Plans and Specifications will not be materially changed until you give written approval of each material change. A material change will amount to $50,000.00 or more.

 

**K. Extras and Contract Charges.** I will obtain your prior written approval of any substantial extras or any material changes to any contract or subcontract with any contractor, subcontractor, supplier, architect or professional engineer. Substantial extras will amount to $25,000.00 or more. I will promptly furnish you all executed copies of all contracts not already furnished to you that are between me and project managers, architects, professional engineers, contractors, subcontractors and material suppliers and those that are between the Project's general contractor and all of its subcontractors and material suppliers.

**L. Fees and Expenses.** I will pay all reasonable and bona fide pre-closing, closing and post-closing fees, costs and expenses incurred by you incidental to the Loan.

**M. Improvement District.** I will not consent or vote to have any of the Property incorporated or annexed into any improvement or other district or area.

**N. Loan Disbursements.** I will apply or cause Project contractors and suppliers to apply the Loan disbursements only to work actually done and materials actually incorporated in the Project and scheduled to be paid under the Disbursement Schedule.

**O. Taxes and Insurance.** I will pay all taxes when due. I will pay all insurance premiums when due on all insurance required by this Agreement. If I fail to obtain or maintain any insurance required by the Loan, you may obtain insurance to protect your interest in the Property. You may obtain insurance with different coverage and at higher rates than what I could have obtained. You may obtain this insurance from a company other than the one I would choose. I will also cause Project's general contractor, any subcontractor or material supplier to obtain and maintain any insurance required under this Agreement.

**P. Financial Records.** I will maintain my financial books and records by consistently applied generally accepted accounting principles then in effect. I will provide or cause to be provided to you financial records from me and my parent or subsidiaries, if any, and the general contractor or any subcontractor involved in the Project. Any interim financial records will be provided as soon as available or at least within 30 days after the close of each of my interim business periods. Annual statements will be provided as soon as available or at least within 90 days after the close of my fiscal year.

Financial statements will be certified by my chief financial or accounting officer or my independent public accountant as fairly representing my financial condition for the stated periods as current, complete, true and accurate in all material respects and without any direct or contingent liabilities, except as disclosed on such financial statements. The annual and interim financial statements and auditing reports will state whether they are audited, reviewed, compiled or prepared statements. I will promptly inform you in writing of any material adverse changes in my financial condition or that of the Project's general contractor.

**Q. Additional Information.** I will provide you with any:

(1) Of my reports, notices or statements to the Securities and Exchange Commission or any securities exchange and to my stockholders, owners, or the holders of any material indebtedness or the trustee under any indenture as soon as available or at least 30 days after issuance.

(2) Information that may materially and adversely affect my ability to perform this Agreement and notify you of this information and its anticipated effect with an immediate telephone call or similar contact.

(3) Other information about my business, operations and financial affairs and condition within 30 days after your request.

**R. Claims.** I will promptly inform you in writing of any threatened or pending lawsuits, arbitration or other proceeding against me, the Project's architect, the general contractor or the Property whose claim exceeds $50,000.00 or that singly or together with other proceedings may adversely affect my ability to perform this Agreement, the Construction Contract or the leases required under the Loan. I will use my best efforts to bring about a favorable and speedy result of any of these lawsuits, arbitration or other proceedings.

I authorize you to intervene in my name in any condemnation, eminent domain, or other proceeding to take the Property. I assign to you the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments. This assignment is subject to any prior mortgage, deed of trust, security agreement or other lien document.

**S. Leasehold.** If I have a leasehold interest in the Property, I will make all lease payments on or before their respective due dates and will not otherwise breach my lease agreement.

**T. Leases and Rents.** I will not lease all or substantially all of the Property without obtaining your prior written consent and approval of these leases' form, terms and provisions. I will not modify, amend, or terminate any of the leases assigned to you. I will not accept any rental payment in advance of its due date, without your prior

written consent. I will not breach my obligations or fail to meet my conditions or requirements under any of the leases assigned to you.

**U. Notice of Default.** I will promptly notify you in writing of any work stoppage or labor dispute affecting the Project as well as any claims filed against Loan reserves and proceeds, any account created under this Agreement or the Property, and any condition or event that is a breach or failure of any condition, warranty, representation, or term of this Agreement, the other Loan Documents or any contract related to the Project.

**V. Lender's Actions Only for Lender's Protection.** I agree that you and your consulting architect are not obligated to inspect, supervise, prevent Construction Liens, or inform me about the Project's progress or performance. You and your consulting architect act for your protection when inspecting the Project, procuring sworn statements and waivers of liens, approving change orders and similar actions. You will incur no liability or obligation to me arising out of such inspection. An inspection for or by you does not waive any default and is not a representation that I have complied with this Agreement, any applicable laws or that the Project is free from defective materials or labor.

**W. Additional Agreement. 1. PARTIAL RELEASES:** At my request, you will partially release from the Security Instrument and reconvey to me an individual subdivision unit and lot when I perform the following conditions: 1) I pay to you the Lot Release Price for that particular Subdivision Unit; 2) I am not in default; and 3) I comply with any other conditions applicable under this Agreement. With this partial release, you will also partially release your security interest, evidenced by a Security Agreement, in any personal property installed on this subdivision lot or unit. With this partial release, you will reconvey the individual subdivision unit and lot to me without warranty. I will pay down the Promissory Notes outstanding principal contemporaneously with your delivery to me of each partial release at the following rates for each parcel: $124,610.00 or 213% of par per lot.

1. Final map to be recorded before funding of hard costs. Prior to final map

2. Soft cost can be funded up to 25% of land value

**14. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

 

**O. Deposits.** I fail to promptly deposit any amounts that you require me to deposit with you.

**P. Contractor's Insolvency.** Any Project general contractor or subcontractor becomes insolvent, either because its liabilities exceed its assets or the Project's general contractor or subcontractor is unable to pay its debts as they become due, and I fail to procure a contract with a new contractor or subcontractor, reasonably satisfactory to you, within 30 days from the occurrence of this insolvency.

**Q. Commitment.** Any governmental agency or another lender, committed to insuring the obligation secured by the Security Instrument or making an interim or permanent loan, fails or refuses to insure, purchase or fund the Loan from you by the time specified in any commitment, and I then fail to promptly pay to you all sums advanced by you under this Agreement.

**R. Encroachment.** Any encroachment to the Property or to other property results from the existence or construction of the Improvements when this encroachment is not removed or corrected within 30 days.

**S. Unsatisfactory Construction.** You or your consulting architect determine that any construction work is not constructed according to the Plans and Specifications or the Construction Contract, communicate this failure to me, and I do not obtain correction of the unsatisfactory construction to the satisfaction of you and your consulting architect within 30 days after notification of this disapproval.

**T. Interruption of Construction.** Construction on the Improvements is delayed or discontinued for the shortest period provided under any performance or payment bonds or otherwise, 10 or more continuous days, so your consulting architect in its sole discretion concludes that the construction may not be completed on or before the Completion Date. The permissible delays for certain events may be increased from 10 to 15 continuous days for a single continuous period or 30 total non-continuous days or shorter periods required by the payment or performance bonds. These certain events permitting delay or discontinuance include: fire, earthquake, or other acts of God, acts of the public enemy, riot, insurrection, governmental regulation of the sale of material and supplies or the transportation thereof, or strikes directly affecting the work of construction, or shortages of material or labor resulting directly from governmental controls or diversions.

**15. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Agreement immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

**D. Waiver.** By choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**E. Take Possession of the Property.** You may take possession of the Property to the extent and in a manner not otherwise prohibited by law.

**F. Complete Project.** You may, but are not obligated to, do anything you determine is necessary or desirable to complete the Project under the Plans and Specifications or as you otherwise consider appropriate. You may at your sole discretion advance funds to complete the Project even when all of these advances exceed the Loan's maximum total principal amount. You may discontinue completing the Project at any time without liability. I appoint and constitute you as my attorney-in-fact with full power and substitution in the Property to complete the Project's development, construction and equipping in my name. This power of attorney is irrevocable since it is a power coupled with an interest.

**G. Lender's Right to Cure.** You may, but are not obligated to, advance Loan reserves or proceeds to cure any default that may be cured by a payment of money.

**H. Casualty.** If all or part of the Improvements are damaged or destroyed by a casualty, I will proceed diligently to make settlement with the insurance company and cause the insurance proceeds to be deposited with you. If you decide that sufficient insurance proceeds and undisbursed Loan reserves and proceeds exist to complete the Project on or before the Completion Date, then you may disburse any insurance proceeds I deposit with you for the Project's restoration and completion. You need not make any disbursements of the Loan reserves and proceeds until such restoration is completed to your satisfaction. If you decide that insufficient insurance proceeds and undisbursed Loan reserves and proceeds exist to complete the Project on or before the

Completion Date, then you will collect, retain and apply these insurance proceeds to reduce the Loan's principal balance.

**I. Correction of Improper Condition.** You may, but are not required to, order any of the following conditions be corrected before the Project's development, construction and equipping may continue when, in your reasonable discretion, you determine that:

    (1) The Plans and Specifications are defective.

    (2) The Project substantially deviates from the Plans and Specifications.

    (3) The Project's workmanship or materials are defective.

    (4) Encroachments exist that you did not consent to.

    (5) A violation of any applicable law, regulation or ordinance has occurred on the Property or with the development, construction or equipping of the Property.

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses are limited to the costs actually incurred for recording, mailing, publishing, and posting legally required notices, costs of postponement not to exceed $50, litigation or trustee sale fees, and attorneys fees allowed by law. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Promissory Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**17. APPLICABLE LAW.** This Agreement is governed by the laws of California, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**18. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. You may assign all or part of your rights or duties under this Agreement or the Loan Documents without my consent. If you assign this Agreement, all of my covenants, agreements, representations and warranties contained in this Agreement or the Loan Documents will benefit your successors and assigns. I may not assign this Agreement or any of my rights under it without your prior written consent. The duties of the Loan will bind my successors and assigns.

**19. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**20. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**21. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. Notice to one Owner will be deemed to be notice to all Owners. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.



**22. LIST OF EXHIBITS.** The following documents, that are checked, are incorporated by reference into this Agreement:

☐Builder's Risk Insurance
☐Construction Contract
☐Copy of any Leases
☐Disbursement Schedule
☐Plans and Specifications
☐Project Budget
☐Subdivision Price List
☐Surety Bonds
☐Title Insurance Policy or Title Insurance Commitment or Interim Binder
☐Abstract and Title Opinion
☐Architect's Consent and Acknowledgment
☐General Contractor's Consent and Acknowledgment
☐Promissory Note
☐Security Agreement
☐Security Instrument
☐Guaranty Agreement
☐Affidavit Under Section 22 of the Lien Law of the State of New York

**23. SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

BORROWER:

Desert Equipment, Inc.
By _____
Jessie Warner, President
By _____
Charlotte Brock, Secretary

OWNER:

Desert Equipment, Inc.
By _____
Jessie Warner, President
By _____
Charlotte Brock, Secretary

Desert Equipment, Inc.

Exhibit "A"
Page 1 of 3

**Construction Loan Agreement**

All that certain real property in the County of RIVERSIDE, State of California, described as follows:

That portion of the Northeast quarter of Section 35, Township 5 South, Range 7 East, San Bernardino Base and Meridian, in the City of Indio, County of Riverside, State of California, according to the Official Plat thereof, more particularly described as follows:

Beginning at the most Easterly corner of Lot 27 of Tract No. 11868, filed in Book 102 Page(s) 41 and 42;

Thence along the Northeasterly boundary thereof North 57°10'42" West, 115.60 feet;

Thence leaving said boundary North 32°49'18" East, 280.75 feet to the beginning of a tangent curve concave Southerly and having a radius of 25.00 feet;

Thence Easterly along said curve through a central angle of 82°22'37", an arc length of 35.94 feet to the beginning of a curve concave Southwesterly and having a radius of 878.00 feet;

Thence Southeasterly along said curve through a central angle of 40°50'36", an arc length of 625.88 feet;

Thence non-tangent said curve North 63°55'44" East, 44.00 feet to a point along the arc of a curve concave Southwesterly and having a radius of 922.00 feet, a radial line through said point bears North 63°55'44" East;

Thence Southeasterly along said curve through a central angle of 26°04'10", an arc length of 419.51 feet;

Thence tangent to said curve South 0°00'06" East, 703.00 feet to the beginning of a tangent curve concave Northeasterly and having a radius of 25.00 feet;

Thence Southeasterly along said curve through a central angle of 90°00'00", an arc length of 39.27 feet;

Thence non-tangent to said curve South 00°00'06" East, 44.00 feet to a point on the arc of a non-tangent curve concave Southeasterly and having a radius of 25.00 feet, a radial line through said point bears North 00°00'06" West;

Thence Southwesterly along said curve through a central angle of 90°00'00", an arc length of 39.27 feet;

Thence non-tangent to said curve South 89°59'54" West, 44.00 feet to a point along the arc of a non-tangent curve Southwesterly and having a radius of 25.00 feet, a radial line through said point bears North 89°59'54" East;

Desert Equipment, Inc.

Exhibit "A"
Page 2 of 3

**Construction Loan Agreement**

Thence Northwesterly along said curve through a central angle of 90°00'00", an arc length of 39.27 feet;

Thence tangent to said curve South 89°59'54" West, 343.00 feet to the point of beginning of a tangent curve concave Northerly and having a radius of 522.00 feet;

Thence Westerly along said curve through a central angle of 23°00'00", an arc length of 209.54 feet to the beginning of a reverse curve concave Southerly and having a radius of 478.00 feet;

Thence Westerly along said curve through a central angle of 28°01'51", an arc length of 233.85 feet;

Thence non-tangent to said curve North 5°01'57" West, 282.014 feet;

Thence North 48°36'00" West, 55.00 feet

Thence North 41°24'00" East, 614.27 feet;

Thence North 4°59'10" East, 332.56 feet;

Thence South 22°51'42" East, 381.14 feet;

Thence South 4°28'52" East, 794.26 feet;

Thence North 89°59'54" East, 112.08 feet;

Thence North 0°21'39" West, 810.00 feet;

Thence North 17°23'34" West, 300.00 feet;

Thence North 40°29'30" West, 323.47 feet;

Thence North 57°10'42" West, 79.42 feet;

Thence South 32°49'18" West, 202.96 feet to the point of beginning

Excepting therefrom all oil, gas, minerals, hydrocarbon substances and thermal heat in or underlying said land, without, however, the right of surface entry and without the right of entry in and to the subsurface thereof, at a depth of less than 500 feet beneath the surface as conveyed to RWNCO, a California Corporation by Deed recorded April 20, 1978 , as instrument no. 7619 of Official Records

Also excepting therefrom that portion lying within the area described in that certain easement Deed in favor of the Southern California Gas Company recorded July 30, 1981 , as instrument no. 144736 of Official Records

Continuation of Construction Loan Agreement dated 08-14-2006

## EXHIBIT "B"

DATE: 08-14-2006

DEBTOR: Desert Equipment, INC.

LEGAL: See Exhibit "A"

### DISBURSEMENT:

Subject to the provisions hereof, the monies in the Account are to be disbursed, except as therein provided, by the Bank in order to provide funds for the construction of the improvements, and are to be paid at the time or times, in accordance with either of the following set forth plans (or any combination thereof), or any other plan agreed to by the Bank and Borrower, to the Bank, to Borrower, or any of them, or to the contractors, materialmen or laborers, or any of them, engaged in such construction.

### LOAN VOUCHER DISBURSEMENT PLAN:

The Borrower or Contractor, or both, or the duly authorized agent of either, may present to the Bank a written loan disbursement voucher, drawn upon the monies in the Account, payable to the borrower, contractor, material men or laborer for work done or materials furnished in such construction. The presentation to the Bank of such voucher shall constitute a representation on the part of the undersigned that the monies therein referred to have been used in the construction of the improvements herein referred to, and the Bank shall be entitled to rely thereon and shall be held free and harmless from all liability in connection therewith. Such vouchers may be approved and paid by the Bank upon such terms and conditions as it may see fit to impose.

To pay a sum of $ 877,251.00 the estimated interest due on the loan. This fund may be disbursed at the option of United Security Bank without authorization by the undersigned.

To provide a fund of $ 369,015.00 for any contingencies that may arise in connection with the construction of improvements. This fund may be disbursed at the option of United Security Bank without prior approval of Borrower; however, Borrower will be notified of each disbursement.

Initials

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 80986601 | Desert Equipment, Inc. | ~~4401041~~  | 08/14/06 | RD |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $4,797,000.00 | United Security Bank Reference Rate plus 1.250% | 9.500% | 08/05/08 | Commercial |
| | | **Creditor Use Only** | | |

## PROMISSORY NOTE
### (Commercial - Draw)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is August 14, 2006. The parties and their addresses are:

**LENDER:**
    **UNITED SECURITY BANK**
    Bakersfield Office
    1525 E. Shaw Avenue, Ste. 100
    Fresno, California 93710
    Telephone: (559) 248-5074

**BORROWER:**
    **DESERT EQUIPMENT, INC.**
    a California Corporation
    1830 Brundage Lane, Suite A
    Bakersfield, California 93304

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

    **A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

    **B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

    **C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

    **D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

    **E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

    **F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Note up to the maximum total principal balance of $4,797,000.00 (Principal) plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note matures or this obligation is accelerated.

All advances made will be made subject to the terms of a separate construction loan agreement and all other terms and conditions of this Loan.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **9.500 percent (Interest Rate)** until August 15, 2006, after which time it may change as described in the Variable Rate subsection.

 

**A. Interest After Default.** If you declare a default under the terms of this Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Note. In such event, interest will accrue on the outstanding Principal balance at the variable Interest Rate in effect from time to time, plus an additional 3.000 percent, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the California Banking Law (Cal. Fin. Code, Div. 1).

**D. Accrual.** Interest accrues using an Actual/360 days counting method.

**E. Variable Rate.** The Interest Rate may change during the term of this transaction.

(1) **Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the United Security Bank Reference Rate.

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) **Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change August 15, 2006 and daily thereafter.

(3) **Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.250 percent. The result of this calculation will be rounded up to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) **Effect Of Variable Rate.** A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments and the amount of the final payment will change.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Note.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. I will pay this late charge promptly but only once for each late payment.

**B. Returned Check Charge.** I agree to pay a fee not to exceed $15.00 for each check, negotiable order of withdrawal or draft I issue in connection with this Loan that is returned because it has been dishonored.

**6. PAYMENT.** I agree to pay this Note in installments of accrued interest beginning September 5, 2006, and then on the 5th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on August 5, 2008. The final payment includes an amount for interest reserve and may need to be adjusted when the payment becomes due and payable.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due then to principal that is due, and finally to any charges that I owe other than principal and interest. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**7. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**8. LOAN PURPOSE.** The purpose of this Loan is for the development of 82 R-1 zoned lots in Indio, CA.

**9. ADDITIONAL TERMS.** (1) LIEN RELEASE FEE: In addition to all other charges, I agree, to the extent not prohibited by law, to pay all governmental fees for release of Lenders security interest in collateral securing this loan. I will pay these fees at the time the lien or liens are released.

(2) MINIMUM INTEREST CHARGE. I agree to pay a minimum interest charge of $150.00 if I pay this Note in full before you have earned that much in interest.

**10. SECURITY.** This Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document |
|---|---|
| Security Agreement - Desert Equipment, Inc. | Desert Equipment, Inc. |
| Deed Of Trust - NW corner of Odlum Dr. and Barrymore St. | Desert Equipment, Inc. |

**11. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Note or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Note.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Note or that the prospect for payment or performance of the Loan is impaired for any reason.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. However, if I am in default under this Agreement, I may not sell the inventory portion of the Property even in the ordinary course of business.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**14. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure the default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of this Note immediately due.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate.

**E. Termination.** You may terminate my right to obtain advances and may refuse to make any further extensions of credit.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Note against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Note" means the total amount to which you are entitled to demand payment under the terms of this Note at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account. In addition, your right to set-off against any demand deposit accounts I have deposited with you may be limited by applicable California law. In certain circumstances, I may be entitled to a notice of set-off. State law may further limit your right of set-off.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By

electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**15. SUSPENSION OF REMEDIES.** You may not use any Remedy if I fail to make a payment which becomes due during a disability claim period and for which disability insurance coverage is provided. However, this term will not prohibit the use of any remedy if a payment is for an amount advanced after I have given you notice of a disability claim, unless a different disability causes the nonpayment.

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Note or any other Loan Document. Expenses are limited to the costs actually incurred for recording, mailing, publishing, and posting legally required notices, costs of postponement not to exceed $50, litigation or trustee sale fees, and attorneys fees allowed by law. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**17. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**18. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Note is in effect:

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Note and the obligation evidenced by this Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

**C. Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**19. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

**A. Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing this Loan.

**B. Insurance Warranties.** I agree to purchase any insurance coverages that are required, in the amounts you require, as described in this or any other documents I sign for this Loan. I will provide you with continuing proof of coverage. I will buy or provide insurance from a firm licensed to do business in the State where the Property is located. If I buy or provide the insurance from someone other than you, the firm will be reasonably acceptable to you. I will have the insurance company name you as loss payee on any insurance policy. You will apply the insurance proceeds toward what I owe you on the outstanding balance. I agree that if the insurance proceeds do not cover the amounts I still owe you, I will pay the difference. I will keep the insurance until all debts secured by this agreement are paid. If I want to buy the insurance from you, I have signed a separate statement agreeing to this purchase.

**20. APPLICABLE LAW.** This Note is governed by the laws of California, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**21. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**22. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**23. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**24. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**25. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**26. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**27. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

Desert Equipment, Inc.

By
Jessie Warner, President

By
Charlotte Brock, Secretary

## APPENDIX: FEES AND CHARGES

As described in the ADDITIONAL CHARGES section of the attached Note, I agree to pay, or have paid, these additional fees and charges.

**Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**Tax Service.** A(n) Tax Service fee of $50.00 payable from the loan proceeds.
**Loan Origination.** A(n) Loan Origination fee of $95,940.00 payable from the loan proceeds.
**Lender's Inspection.** A(n) Lender's Inspection fee of $3,500.00 payable from the loan proceeds.
**Flood Certification.** A(n) Flood Certification fee of $13.00 payable from the loan proceeds.

| PRIOR OBLIGATION INFORMATION | LOAN NUMBER | ACCT. NUMBER | NOTE DATE | NOTE AMOUNT | MATURITY DATE |
|---|---|---|---|---|---|
| | 80986601 | 4401041 | 08/14/06 | $4,797,000.00 | 08/05/08 |

| AMENDED OBLIGATION INFORMATION | LOAN NUMBER | ACCT. NUMBER | MODIFICATION DATE | NOTE AMOUNT |
|---|---|---|---|---|
| | 80986601 | 4402961 | 08/05/08 | $4,797,000.00 |
| | MATURITY DATE | INDEX (w/margin) | INTEREST RATE | INITIALS |
| | 10/05/08 | United Security Bank Reference Rate plus 1.250% | 6.250% | RD |

Creditor Use Only

## DEBT MODIFICATION AGREEMENT

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is August 5, 2008. The parties and their addresses are:

**LENDER:**
  **UNITED SECURITY BANK**
  Bakersfield Office
  2126 Inyo Street
  Fresno, California 93721
  Telephone: (559) 248-5074

**BORROWER:**
  **DESERT EQUIPMENT, INC.**
  a California Corporation
  2920 "H" Street, Suite 142
  Bakersfield, California 93301

**1. DEFINITIONS.** In this Modification, these terms have the following meanings:

  **A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, executors, administrators, successors, and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in the Modification or the Prior Obligation.

  **B. Amended Obligation.** Amended Obligation is the resulting agreement that is created when the Modification amends the Prior Obligation. It is described above in the AMENDED OBLIGATION INFORMATION section.

  **C. Loan.** Loan refers to this transaction generally. It includes the obligations and duties arising from the terms of all documents prepared or submitted in association with the Prior Obligation and this modification, such as applications, security agreements, disclosures, notes, agreements, and this Modification.

  **D. Modification.** Modification refers to this Debt Modification Agreement.

  **E. Prior Obligation.** Prior Obligation refers to my existing agreement described above in the PRIOR OBLIGATION INFORMATION section, and any previous extensions, renewals, modifications or substitutions of it.

**2. BACKGROUND.** You and I have previously entered into a Prior Obligation. As of the date of this Modification, the outstanding, unpaid balance of the Prior Obligation is $3,828,473.99. Conditions have changed since the execution of the Prior Obligation instruments. In response, and for value received, you and I agree to modify the terms of the Prior Obligation, as provided for in this Modification.

Desert Equipment, Inc.
Debt Modification Agreement
CA/4pallegro000630000059930050808080N                ©1996 Bankers Systems, Inc., St. Cloud, MN ExSerial            Initials
                                                                                                                         Page 1

**EXHIBIT B**

**3. TERMS.** The Prior Obligation is modified as follows:

**A. Maturity and Payments.** The maturity and payment provisions are modified to read:

(1) **PAYMENT.** I agree to pay the Loan in installments of accrued interest beginning September 5, 2008, and then on the 5th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on October 5, 2008.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**B. Fees and Charges.** As additional consideration for your consent to enter into this Modification, I agree to pay, or have paid these additional fees and charges:

(1) **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay the Loan before the scheduled maturity date.

Loan. A(n) Loan fee of $6,000.00 payable from separate funds on or before today's date.

(2) **Minimum Finance Charge - Commercial/Ag.** A(n) Minimum Finance Charge - Commercial/Ag equal to $150.00.

(3) **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. I will pay this late charge promptly but only once for each late payment.

(4) **Returned Check Charge.** I agree to pay a fee not to exceed $15.00 for each check, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

**4. CONTINUATION OF TERMS.** Except as specifically amended by this Modification, all of the terms of the Prior Obligation shall remain in full force and effect.

**5. WAIVER.** I waive all claims, defenses, setoffs, or counterclaims relating to the Prior Obligation, or any document securing the Prior Obligation, that I may have. Any party to the Prior Obligation that does not sign this Modification, shall remain liable under the terms of the Prior Obligation unless released in writing by you.

**6. REASON(S) FOR MODIFICATION.** Extension of the maturity date from August 5, 2008 to October 5, 2008.

**7. SIGNATURES.** By signing, I agree to the terms contained in this Modification. I also acknowledge receipt of a copy of this Modification.

BORROWER:

Desert Equipment, Inc.

By _____
Jessie Warner, President

By _____
Charlotte Brock, Secretary

11/21/2008  16:57   661-588-2773          UNITED SECURITY BANK              PAGE  03

| PRIOR OBLIGATION INFORMATION | LOAN NUMBER | ACCT. NUMBER | NOTE DATE | NOTE AMOUNT | MATURITY DATE |
|---|---|---|---|---|---|
| | 80986601 | 4401041 | 08/14/08 | $4,797,000.00 | 08/05/08 |

| AMENDED OBLIGATION INFORMATION | LOAN NUMBER | ACCT. NUMBER | MODIFICATION DATE | NOTE AMOUNT |
|---|---|---|---|---|
| | 80986601 | 4402961 | 11/17/08 | $4,797,000.00 |
| | MATURITY DATE | INDEX (w/margin) | INTEREST RATE | INITIALS |
| | 01/05/09 | United Security Bank Reference Rate plus 1.250% | 5.250% | RD |

Creditor Use Only

## DEBT MODIFICATION AGREEMENT 

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is November 17, 2008. The parties and their addresses are:

    LENDER:
        UNITED SECURITY BANK
        Bakersfield Office
        2126 Inyo Street
        Fresno, California 93721
        Telephone: (559) 248-5074

    BORROWER:
        DESERT EQUIPMENT, INC.
        a California Corporation
        2920 "H" Street, Suite 142
        Bakersfield, California 93301

**1. DEFINITIONS.** In this Modification, these terms have the following meanings:

   **A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, executors, administrators, successors, and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in the Modification or the Prior Obligation.

   **B. Amended Obligation.** Amended Obligation is the resulting agreement that is created when the Modification amends the Prior Obligation. It is described above in the AMENDED OBLIGATION INFORMATION section.

   **C. Loan.** Loan refers to this transaction generally. It includes the obligations and duties arising from the terms of all documents prepared or submitted in association with the Prior Obligation and this modification, such as applications, security agreements, disclosures, notes, agreements, and this Modification.

   **D. Modification.** Modification refers to this Debt Modification Agreement.

   **E. Prior Obligation.** Prior Obligation refers to my existing agreement described above in the PRIOR OBLIGATION INFORMATION section, and any previous extensions, renewals, modifications or substitutions of it.

**2. BACKGROUND.** You and I have previously entered into a Prior Obligation. As of the date of this Modification, the outstanding, unpaid balance of the Prior Obligation is $4,004,336.85. Conditions have changed since the execution of the Prior Obligation Instruments. In response, and for value received, you and I agree to modify the terms of the Prior Obligation, as provided for in this Modification.



11/21/2008  16:57    661-588-2773          UNITED SECURITY BANK                PAGE  04

3. **TERMS.** The Prior Obligation is ...ified as follows:

A. **Interest.** Our agreement for the payment of Interest is modified to read:

(1) **INTEREST.** Interest will accrue on the unpaid Principal balance of the Loan at the rate of 5.250 percent (Interest Rate) until November 18, 2008, after which time it may change as described in the Variable Rate subsection.

(a) **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of the Loan will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

(b) **Statutory Authority.** The amount assessed or collected on the Loan is authorized by the California Banking Law (Cal. Fin. Code, Div. 1).

(c) **Accrual.** Interest accrues using an Actual/360 days counting method.

(d) **Discounted Rate.** The stated rate reflects a discount of 0.750 percent from the formula used to determine later rates (provided in the Variable Rate section). This Discounted Rate will be in effect until November 18, 2008.

(e) **Variable Rate.** The Interest Rate may change during the term of this transaction.

(1) **Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the United Security Bank Reference Rate.

The Current Index is the most recent Index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on the Loan will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

(2) **Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change November 18, 2008 and daily thereafter.

(3) **Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.250 percent. The result of this calculation will be rounded up to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on the Loan will never exceed the highest rate or charge allowed by law for the Loan.

(4) **Limitations.** The Interest Rate changes are subject to the following limitations:

Lifetime. Subject to the initial discount rate, the Interest Rate will never be less than 6.000 percent.

(5) **Effect Of Variable Rate.** A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments and the amount of the final payment will change.

B. **Maturity and Payments.** The maturity and payment provisions are modified to read:

(1) **PAYMENT.** I agree to pay the Loan in installments of accrued interest beginning December 5, 2008, and then on the 5th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on January 5, 2009.

Payments will be rounded up to the nearest 0.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

C. **Fees and Charges.** As additional consideration for your consent to enter into this Modification, I agree to pay, or have paid these additional fees and charges:

(1) **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay the Loan before the scheduled maturity date.

Loan. A(n) Loan fee of $6,000.00 payable from separate funds on or before today's date.

(2) **Minimum Finance Charge - Commercial/Ag.** A(n) Minimum Finance Charge - Commercial/Ag equal to $150.00.

(3) **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. I will pay this late charge promptly but only once for each late payment.

(4) **Returned Check Charge.** I agree to pay a fee not to exceed $15.00 for each check, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

4. **CONTINUATION OF TERMS.** Except as specifically amended by this Modification, all of the terms of the Prior Obligation shall remain in full force and effect.

Desert Equipment, Inc.
Debt Modification Agreement
CA/4pallegro00084600006105008111800N          ©1996 Bankers Systems, Inc., St. Cloud, MN Express®          Initials _____  Page 2

**5. WAIVER.** I waive all claims, defenses, setoffs, or counterclaims relating to the Prior Obligation, or any document securing the Prior Obligation, that I may have. Any party to the Prior Obligation that does not sign this Modification, shall remain liable under the terms of the Prior Obligation unless released in writing by you.

**6. REASON(S) FOR MODIFICATION.** Extension of the maturity date from October 5, 2008 to January 5, 2009.

**7. ADDITIONAL TERMS.** Borrower agrees that no further funds will be advance without the written approval from Lender's Credit Administration.

**8. SIGNATURES.** By signing, I agree to the terms contained in this Modification. I also acknowledge receipt of a copy of this Modification.

BORROWER:

Desert Equipment, Inc.

By _____
Jessie Werner, President

By _____
Charlotte Brock, Secretary

| PRIOR OBLIGATION INFORMATION | LOAN NUMBER | ACCT. NUMBER | NOTE DATE | NOTE AMOUNT | MATURITY DATE |
|---|---|---|---|---|---|
| | 80986601 | 4401041 | 08/14/06 | $4,797,000.00 | 08/05/08 |

| AMENDED OBLIGATION INFORMATION | LOAN NUMBER | ACCT. NUMBER | MODIFICATION DATE | NOTE AMOUNT |
|---|---|---|---|---|
| | 80986601 | 4402961 | 01/05/09 | $4,004,336.85 |
| | MATURITY DATE | INDEX (w/margin) | INTEREST RATE | INITIALS |
| | 04/05/09 | United Security Bank Reference Rate plus 1.250% | 4.500% | RD |
| | | Creditor Use Only | | |

## DEBT MODIFICATION AGREEMENT

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is January 5, 2009. The parties and their addresses are:

> **LENDER:**
> **UNITED SECURITY BANK**
> Bakersfield Office
> 2126 Inyo Street
> Fresno, California 93721
> Telephone: (559) 248-5074

> **BORROWER:**
> **DESERT EQUIPMENT, INC.**
> a California Corporation
> 2920 "H" Street, Suite 142
> Bakersfield, California 93301

**1. DEFINITIONS.** In this Modification, these terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, executors, administrators, successors, and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in the Modification or the Prior Obligation.

**B. Amended Obligation.** Amended Obligation is the resulting agreement that is created when the Modification amends the Prior Obligation. It is described above in the AMENDED OBLIGATION INFORMATION section.

**C. Loan.** Loan refers to this transaction generally. It includes the obligations and duties arising from the terms of all documents prepared or submitted in association with the Prior Obligation and this modification, such as applications, security agreements, disclosures, notes, agreements, and this Modification.

**D. Modification.** Modification refers to this Debt Modification Agreement.

**E. Prior Obligation.** Prior Obligation refers to my existing agreement described above in the PRIOR OBLIGATION INFORMATION section, and any previous extensions, renewals, modifications or substitutions of it.

**2. BACKGROUND.** You and I have previously entered into a Prior Obligation. As of the date of this Modification, the outstanding, unpaid balance of the Prior Obligation is $4,004,336.85. Conditions have changed since the execution of the Prior Obligation instruments. In response, and for value received, you and I agree to modify the terms of the Prior Obligation, as provided for in this Modification.

**3. TERMS.** The Prior Obligation is modified as follows:

**A. Interest.** Our agreement for the payment of interest is modified to read:

(1) INTEREST. Interest will accrue on the unpaid Principal balance of the Loan at the rate of 4.500 percent (Interest Rate) until January 6, 2009, after which time it may change as described in the Variable Rate subsection.

(a) Maximum Interest Amount. Any amount assessed or collected as interest under the terms of the Loan will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

(b) Statutory Authority. The amount assessed or collected on the Loan is authorized by the California Banking Law (Cal. Fin. Code, Div. 1).

(c) Accrual. Interest accrues using an Actual/360 days counting method.

(d) Discounted Rate. The stated rate reflects a discount of 1.500 percent, from the formula used to determine later rates (provided in the Variable Rate section). This Discounted Rate will be in effect until January 6, 2009.

(e) Variable Rate. The Interest Rate may change during the term of this transaction.

(1) Index. Beginning with the first Change Date, the Interest Rate will be based on the following index: the United Security Bank Reference Rate.

The Current Index is the most recent Index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on the Loan will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar Index. You will give me notice of your choice.

(2) Change Date. Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change January 6, 2009 and daily thereafter.

(3) Calculation Of Change. On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.250 percent. The result of this calculation will be rounded up to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on the Loan will never exceed the highest rate or charge allowed by law for the Loan.

(4) Limitations. The Interest Rate changes are subject to the following limitations:

Lifetime. Subject to the initial discount rate, the Interest Rate will never be less than 6.000 percent.

(5) Effect Of Variable Rate. A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments and the amount of the final payment will change.

**B. Maturity and Payments.** The maturity and payment provisions are modified to read:

(1) PAYMENT. I agree to pay the Loan in installments of accrued interest beginning February 5, 2009, and then on the 5th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on April 5, 2009.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**C. Fees and Charges.** As additional consideration for your consent to enter into this Modification, I agree to pay, or have paid these additional fees and charges:

(1) Nonrefundable Fees and Charges. The following fees are earned when collected and will not be refunded if I prepay the Loan before the scheduled maturity date.

Loan. A(n) Loan fee of $3,300.00 payable from separate funds on or before today's date.

(2) Minimum Finance Charge - Commercial/Ag. A(n) Minimum Finance Charge - Commercial/Ag equal to $150.00.

(3) Late Charge. If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. I will pay this late charge promptly but only once for each late payment.

(4) Returned Check Charge. I agree to pay a fee not to exceed $15.00 for each check, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

**4. CONTINUATION OF TERMS.** Except as specifically amended by this Modification, all of the terms of the Prior Obligation shall remain in full force and effect.

*C.B.*

**5. WAIVER.** I waive all claims, defenses, setoffs, or counterclaims relating to the Prior Obligation, or any document securing the Prior Obligation, that I may have. Any party to the Prior Obligation that does not sign this Modification, shall remain liable under the terms of the Prior Obligation unless released in writing by you.

**6. REASON(S) FOR MODIFICATION.**
(1) Extension of the maturity date from January 5, 2009 to April 5, 2009.

(2) Decrease the loan amount from 4,797,000.00 to $4,004,337.00.

**7. ADDITIONAL TERMS.** Borrower agrees that no further funds will be advance without the written approval from Lender's Credit Administration.

**8. SIGNATURES.** By signing, I agree to the terms contained in this Modification. I also acknowledge receipt of a copy of this Modification.


BORROWER:

Desert Equipment, Inc.

By _____
Jessie Werner, President

By _____
Charlotte Brock, Secretary

| PRIOR OBLIGATION INFORMATION | LOAN NUMBER | ACCT. NUMBER | NOTE DATE | NOTE AMOUNT | MATURITY DATE |
|---|---|---|---|---|---|
| | 80986601 | 4401041 | 08/14/06 | $4,797,000.00 | 08/05/08 |

| AMENDED OBLIGATION INFORMATION | LOAN NUMBER | ACCT. NUMBER | MODIFICATION DATE | NOTE AMOUNT |
|---|---|---|---|---|
| | 80986601 | 4402861 | 04/05/09 | $4,004,336.85 |
| | MATURITY DATE | INDEX (w/margin) | INTEREST RATE | INITIALS |
| | 07/05/09 | United Security Bank Reference Rate plus 1.250% | 4.500% | RM |

Creditor Use Only

# DEBT MODIFICATION AGREEMENT

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is April 5, 2009. The parties and their addresses are:

**LENDER:**
  **UNITED SECURITY BANK**
  Bakersfield Office
  2126 Inyo Street
  Fresno, CA  93721
  Telephone: (559) 248-5074

**BORROWER:**
  **DESERT EQUIPMENT, INC.**
  a California Corporation
  2920 "H" Street, Suite 142
  Bakersfield, CA 93301

**1. DEFINITIONS.** In this Modification, these terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, executors, administrators, successors, and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in the Modification or the Prior Obligation.

**B. Amended Obligation.** Amended Obligation is the resulting agreement that is created when the Modification amends the Prior Obligation. It is described above in the AMENDED OBLIGATION INFORMATION section.

**C. Loan.** Loan refers to this transaction generally. It includes the obligations and duties arising from the terms of all documents prepared or submitted in association with the Prior Obligation and this modification, such as applications, security agreements, disclosures, notes, agreements, and this Modification.

**D. Modification.** Modification refers to this Debt Modification Agreement.

**E. Prior Obligation.** Prior Obligation refers to my existing agreement described above in the PRIOR OBLIGATION INFORMATION section, and any previous extensions, renewals, modifications or substitutions of it.

**2. BACKGROUND.** You and I have previously entered into a Prior Obligation. As of the date of this Modification, the outstanding, unpaid balance of the Prior Obligation is $4,004,336.85. Conditions have changed since the execution of the Prior Obligation Instruments. In response, and for value received, you and I agree to modify the terms of the Prior Obligation, as provided for in this Modification.

Desert Equipment, Inc.
Debt Modification Agreement
CA/4pallegro0010510000624300604070SN
©1996 Bankers Systems, Inc., St. Cloud, MN  Exşerelå
Initials
Page 1

**3. TERMS.** The Prior Obligation is modified as follows:

**A. Maturity and Payments.** The maturity and payment provisions are modified to read:

(1) **PAYMENT.** I agree to pay the Loan in installments of accrued interest beginning May 5, 2009, and then on the 5th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on July 5, 2009.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**B. Fees and Charges.** As additional consideration for your consent to enter into this Modification, I agree to pay, or have paid these additional fees and charges:

(1) **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay the Loan before the scheduled maturity date.

Loan. A(n) Loan fee of $2,500.00 payable from separate funds on or before today's date.

(2) **Minimum Finance Charge - Commercial/Ag.** A(n) Minimum Finance Charge - Commercial/Ag equal to $150.00.

(3) **Late Charge.** If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. I will pay this late charge promptly but only once for each late payment.

(4) **Returned Check Charge.** I agree to pay a fee not to exceed $15.00 for each check, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

**4. CONTINUATION OF TERMS.** Except as specifically amended by this Modification, all of the terms of the Prior Obligation shall remain in full force and effect.

**5. WAIVER.** I waive all claims, defenses, setoffs, or counterclaims relating to the Prior Obligation, or any document securing the Prior Obligation, that I may have. Any party to the Prior Obligation that does not sign this Modification, shall remain liable under the terms of the Prior Obligation unless released in writing by you.

**6. REASON(S) FOR MODIFICATION.** Extension of the maturity date from April 5, 2009 to July 5, 2009.

**7. ADDITIONAL TERMS.** Borrower agrees that no further funds will be advance without the written approval from Lender's Credit Administration.

**8. SIGNATURES.** By signing, I agree to the terms contained in this Modification. I also acknowledge receipt of a copy of this Modification.

BORROWER:

Desert Equipment, Inc.

By _____
Jessie Warner, President

By _____
Charlotte Brock, Secretary

09/29/2009  09:25  6615882773          UNITED SECURITY BANK          PAGE  14/22

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | AGREEMENT DATE | INITIALS |
|---|---|---|---|---|
| 80986601 | Desert Equipment, Inc. | 4402961 | 09/22/09 | MM |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $4,004,336.85 | United Security Bank Reference Rate plus 1.250% | 4.500% | 12/05/09 | Commercial |

Creditor Use Only

## COMMERCIAL LOAN AGREEMENT
### Draw Loan

**DATE AND PARTIES.** The date of this Commercial Loan Agreement (Agreement) is September 22, 2009. The parties and their addresses are as follows:

**LENDER:**
   **UNITED SECURITY BANK**
   Bakersfield Office
   2126 Inyo Street
   Fresno, CA 93721

**BORROWER:**
   **DESERT EQUIPMENT, INC.**
   a California Corporation
   2920 H Street, Suite 142
   Bakersfield, CA 93301

1. **DEFINITIONS.** For the purposes of this Agreement, the following terms have the following meanings.

   **A. Accounting Terms.** In this Agreement, any accounting terms that are not specifically defined will have their customary meanings under generally accepted accounting principles.

   **B. Insiders.** Insiders include those defined as insiders by the United States Bankruptcy Code, as amended; or to the extent left undefined, include without limitation any officer, employee, stockholder or member, director, partner, or any immediate family member of any of the foregoing, or any person or entity which, directly or indirectly, controls, is controlled by or is under common control with me.

   **C. Loan.** The Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

   **D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

   **E. Pronouns.** The pronouns "I", "me" and "my" refer to every Borrower signing this Agreement, individually or together. "You" and "your" refers to the Loan's lender.

   **F. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

2. **ADVANCES.** Advances under this Agreement are made according to the following terms and conditions.

   **A. Multiple Advances.** In accordance with the terms of this Agreement and other Loan Documents, you will provide me with a draw note and the maximum total principal balance will not exceed $4,004,336.85 (Principal).

   **B. Requests for Advances.** My requests are a warranty that I am in compliance with all the Loan Documents. When required by you for a particular method of advance, my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents, and instruments that you require for the Loan. Any payment by you of any check, share draft or other charge may, at your option,

constitute an advance on the Loan to me. All advances will be made in United States dollars. I will indemnify you and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine. To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized or this person's signature is not genuine.

I or anyone I authorize to act on my behalf may request advances by the following methods.

    **(1)** I make a request in person.

    **(2)** I make a request by phone.

    **(3)** I make a request by mail.

**C. Advance Limitations.** In addition to any other Loan conditions, requests for, and access to, advances are subject to the following limitations.

    **(1) Discretionary Advances.** You will make all Loan advances at your sole discretion.

    **(2) Advance Amount.** Subject to the terms and conditions contained in this Agreement, advances will be made in exactly the amount I request.

    **(3) Authorized Persons.** Requests for advances must be made by at least 2, acting together, of those I authorize to act on my behalf.

    **(4) Cut-Off Time.** Requests for an advance received before 04:00 PM will be made on any day that you are open for business, on the day for which the advance is requested.

    **(5) Disbursement of Advances.** On my fulfillment of this Agreement's terms and conditions, you will disburse the advance into my account number per request.

    **(6) Credit Limit.** I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit. You may, at your option, grant such a request without obligating yourselves to do so in the future. I will pay any over advances in addition to my regularly scheduled payments. I will repay any over advance by repaying you in full within 10 days after the overdraft occurs.

    **(7) Records.** Your records will be conclusive evidence as to the amount of advances, the Loan's unpaid principal balances and the accrued interest.

**D. Conditions.** I will satisfy all of the following conditions before you either issue any promissory notes or make any advances under this Agreement. These are the minimum conditions under which you would consider making an advance, but satisfaction of these conditions does not commit you to advancing funds under this Agreement.

    **(1) No Default.** There has not been a default under this Agreement or any other Loan Documents nor would a default result from making the Loan or any advance.

    **(2) Information.** You have received all documents, information, certifications and warranties as you may require, all properly executed, if appropriate, on forms acceptable to you.

    **(3) Inspections.** You have made all inspections that you consider necessary and are satisfied with this inspection.

    **(4) Conditions and Covenants.** I will have performed and complied with all conditions required for an advance and all covenants in this Agreement and any other Loan Documents.

    **(5) Warranties and Representations.** The warranties and representations contained in this Agreement are true and correct at the time of making the requested advance.

    **(6) Financial Statements.** My most recent financial statements and other financial reports, delivered to you, are current, complete, true and accurate in all material respects and fairly represent my financial condition.

    **(7) Bankruptcy Proceedings.** No proceeding under the United States Bankruptcy Code has been commenced by or against me or any of my affiliates.

**3. MATURITY DATE.** I agree to fully repay the Loan by December 5, 2009.

**4. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Loan is in effect, except when this Agreement provides otherwise.

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Loan and the obligation evidenced by the Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**D. Hazardous Substances.** Except as I previously disclosed in writing and you acknowledge in writing, no Hazardous Substance, underground tanks, private dumps or open wells are currently located at, on, in, under or about the Property.

**E. Use of Property.** After diligent inquiry, I do not know or have reason to know that any Hazardous Substance has been discharged, leached or disposed of, in violation of any Environmental Law, from the property onto, over or into any other property, or from any other property onto, over or into the property.

**F. Environmental Laws.** I have no knowledge or reason to believe that there is any pending or threatened investigation, claim, judgment or order, violation, lien, or other notice under any Environmental Law that concerns me or the property. The property and any activities on the property are in full compliance with all Environmental Law.

**G. Loan Purpose.** The purpose of this Loan is for the renewal of a construction loan used to develop of 82 R-1 zoned lots in Indio, CA, which are now completed and to convert to a Commercial Term Loan.

**H. No Other Liens.** I own or lease all property that I need to conduct my business and activities. I have good and marketable title to all property that I own or lease. All of my Property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those to you or those you consent to in writing.

**I. Compliance With Laws.** I am not violating any laws, regulations, rules, orders, judgments or decrees applicable to me or my property, except for those which I am challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should I lose.

**J. Legal Disputes.** There are no pending or threatened lawsuits, arbitrations or other proceedings against me or my property that singly or together may materially and adversely affect my property, operations, financial condition, or business.

**K. Adverse Agreements.** I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations.

**L. Other Claims.** There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents. No outstanding claims or rights exist that may result in a lien on the Property, the Property's proceeds and the proceeds of proceeds, except liens that were disclosed to and agreed to by you in writing.

**M. Solvency.** I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities. I will not become insolvent by the execution or performance of this Loan.

**5. FINANCIAL STATEMENTS.** I will prepare and maintain my financial records using consistently applied generally accepted accounting principles then in effect. I will provide you with financial information in a form that you accept and under the following terms.

**A. Certification.** I represent and warrant that any financial statements that I provide you fairly represents my financial condition for the stated periods, is current, complete, true and accurate in all material respects, includes all of my direct or contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date the financial information was prepared.

**B. Frequency.** Annually, I will provide to you my financial statements, tax returns, annual internal audit reports or those prepared by independent accountants as soon as available or at least within 90 days after the close of each of my fiscal years. Any annual financial statements that I provide you will be prepared statements.



**C. SEC Reports.** I will provide you with true and correct copies of all reports, notices or statements that I provide to the Securities and Exchange Commission, any securities exchange or my stockholders, owners, or the holders of any material indebtedness as soon as available or at least within  days after issuance.

**D. Requested Information.** I will provide you with any other information about my operations, financial affairs and condition within  days after your request.

**6. COVENANTS.** Until the Loan and all related debts, liabilities and obligations are paid and discharged, I will comply with the following terms, unless you waive compliance in writing.

**A. Participation.** I consent to you participating or syndicating the Loan and sharing any information that you decide is necessary about me and the Loan with the other participants or syndicators.

**B. Inspection.** Following your written request, I will immediately pay for all one-time and recurring out-of-pocket costs that are related to the inspection of my records, business or Property that secures the Loan. Upon reasonable notice, I will permit you or your agents to enter any of my premises and any location where my Property is located during regular business hours to do the following.

    **(1)** You may inspect, audit, check, review and obtain copies from my books, records, journals, orders, receipts, and any correspondence and other business related data.

    **(2)** You may discuss my affairs, finances and business with any one who provides you with evidence that they are a creditor of mine, the sufficiency of which will be subject to your sole discretion.

    **(3)** You may inspect my Property, audit for the use and disposition of the Property's proceeds and proceeds of proceeds; or do whatever you decide is necessary to preserve and protect the Property and your interest in the Property.

After prior notice to me, you may discuss my financial condition and business operations with my independent accountants, if any, or my chief financial officer and I may be present during these discussions. As long as the Loan is outstanding, I will direct all of my accountants and auditors to permit you to examine my records in their possession and to make copies of these records. You will use your best efforts to maintain the confidentiality of the information you or your agents obtain, except you may provide your regulator, if any, with required information about my financial condition, operation and business or that of my parent, subsidiaries or affiliates.

**C. Business Requirements.** I will preserve and maintain my present existence and good standing in the jurisdiction where I am organized and all of my rights, privileges and franchises. I will do all that is needed or required to continue my business or activities as presently conducted, by obtaining licenses, permits and bonds everywhere I engage in business or activities or own, lease or locate my property. I will obtain your prior written consent before I cease my business or before I engage in any new line of business that is materially different from my present business.

**D. Compliance with Laws.** I will not violate any laws, regulations, rules, orders, judgments or decrees applicable to me or my Property, except for those which I challenge in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should I lose. Laws include without limitation the Federal Fair Labor Standards Act requirements for producing goods, the federal Employee Retirement Income Security Act of 1974's requirements for the establishment, funding and management of qualified deferred compensation plans for employees, health and safety laws, environmental laws, tax laws, licensing and permit laws. On your request, I will provide you with written evidence that I have fully and timely paid my taxes, assessments and other governmental charges levied or imposed on me, my income or profits and my property. Taxes include without limitation sales taxes, use taxes, personal property taxes, documentary stamp taxes, recordation taxes, franchise taxes, income taxes, withholding taxes, FICA taxes and unemployment taxes. I will adequately provide for the payment of these taxes, assessments and other charges that have accrued but are not yet due and payable.

**E. New Organizations.** I will obtain your written consent before organizing, merging into, or consolidating with an entity; acquiring all or substantially all the assets of another; materially changing the legal structure, management, ownership or financial condition; or effecting or entering into a domestication, conversion or interest exchange.

**F. Dealings with Insiders.** I will not purchase, acquire or lease any property or services from, or sell, provide or lease any property or services to, or permit any outstanding loans or credit extensions to, or otherwise deal with, any insiders except as required under contracts existing at the time I applied for the Loan and approved by you or as this Agreement otherwise permits. I will not change or breach these contracts existing at Loan application so as to cause an acceleration of or an increase in any payments due.

**G. Other Debts.** I will pay when due any and all other debts owed or guaranteed by me and will faithfully perform, or comply with all the conditions and obligations imposed on me concerning the debt or guaranty.

**H. Other Liabilities.** I will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations, except:  debt in existence on the date of this Agreement and fully disclosed to you; debt subordinated in payment to you on conditions and terms acceptable to you; accounts payable incurred in the ordinary course of my business and paid under customary trade terms or contested in good faith with reserves satisfactory to you.

**I. Notice to You.** I will promptly notify you of any material change in my financial condition, of the occurrence of a default under the terms of this Agreement or any other Loan Document, or a default by me under any agreement between me and any third party which materially and adversely affects my property, operations, financial condition or business.

**J. Certification of No Default.** On your request, my chief financial officer or my independent accountant will provide you with a written certification that to the best of their knowledge no event of default exists under the terms of this Agreement or the other Loan Documents, and that there exists no other action, condition or event which with the giving of notice or lapse of time or both would constitute a default. As requested, my chief financial officer or my independent accountant will also provide you with computations demonstrating compliance with any financial covenants and ratios contained in this Agreement.  If an action, condition or event of default does exist, the certificate must accurately and fully disclose the extent and nature of this action, condition or event and state what must be done to correct it.

**K. Use of Loan Proceeds.** I will not permit the loan proceeds to be used to purchase, carry, reduce, or retire any loan originally incurred to purchase or carry any margin stock or otherwise cause the Loan to violate Federal Reserve Board Regulations U or X, or Section 8 of the Securities and Exchange Act of 1934 and its regulations, as amended.

**L. Dispose of No Assets.** Without your prior written consent or as the Loan Documents permit, I will not sell, lease, assign, transfer, dispose of or otherwise distribute all or substantially all of my assets to any person other than in the ordinary course of business for the assets' depreciated book value or more.

**M. No Other Liens.** I will not create, permit or suffer any lien or encumbrance upon any of my properties for or by anyone, other than you, except for: nonconsensual liens imposed by law arising out of the ordinary course of business on obligations that are not overdue or which I am contesting in good faith after making appropriate reserves; valid purchase money security interests on personal property; or any other liens specifically agreed to by you in writing.

**N. Guaranties.** I will not guaranty or become liable in any way as surety, endorser (other than as endorser of negotiable instruments in the ordinary course of business) or accommodation endorser or otherwise for the debt or obligations of any other person or entity, except to you or as you otherwise specifically agree in writing.

**O. No Default under Other Agreements.** I will not allow to occur, or to continue unremedied, any act, event or condition which constitutes a default , or which, with the passage of time or giving of notice, or both, would constitute a default  under any agreement, document, instrument or undertaking to which I am a party or by which I may be bound.

**P. Legal Disputes.** I will promptly notify you in writing of any threatened or pending lawsuit, arbitration or other proceeding against me or any of my property, not identified in my financial statements, whose claim exceeds $50,000.00 or that singly or together with other proceedings may materially and adversely affect my property, operations, financial condition or business.  I will use my best efforts to bring about a favorable and speedy result of any of these lawsuits, arbitrations or other proceedings.

**Q. Other Notices.** I will immediately provide you with any information that may materially and adversely affect my ability to perform this Agreement and of its anticipated effect.

**R. No Change in Capital.** I will not release, redeem, retire, purchase or otherwise acquire, directly or indirectly, any of my capital stock or other equity security or partnership interest, or make any change in my capital structure, except to the extent required by any agreements signed prior to this Agreement and disclosed to you or with your prior written consent.

**S. Loan Obligations.** I will make full and timely payment of all principal and interest obligations, and comply with the other terms and agreements contained in this Agreement and in the other Loan Documents.

**T. Insurance.** I will obtain and maintain insurance with insurers, in amounts and coverages that are acceptable to you and customary with industry practice.  This may include without limitation insurance policies for public



liability, fire, hazard and expanded risk, workers compensation, and, at your request, business interruption and/or rent loss insurance. At your request, I will deliver to you certified copies of all of these insurance policies, binders or certificates. I will obtain and maintain a mortgagee or lender loss payee endorsement for you when these endorsements are available. I will immediately notify you of cancellation or termination of insurance. I will require all insurance policies to provide you with at least 10 days prior written notice to you of cancellation or modification. I consent to you using or disclosing information relative to any contract of insurance required by the Loan for the purpose of replacing this insurance. I also authorize my insurer and you to exchange all relevant information related to any contract of insurance required by any document executed as part of this Loan.

**U. Property Maintenance.** I will keep all tangible and intangible property that I consider necessary or useful in my business in good working condition by making all needed repairs, replacements and improvements and by making all rental, lease or other payments due on this property.

**V. Property Loss.** I will immediately notify you, and the insurance company when appropriate, of any material casualty, loss or depreciation to the Property or to my other property that affects my business.

**W. Reserves.** You may set aside and reserve Loan proceeds for Loan interest, fees and expenses, taxes, and insurance. I grant you a security interest in the reserves.

No interest will accrue on any reserve Loan proceeds. Disbursement of reserves is disbursement of the Loan's proceeds. At my request, you will disburse the reserves for the purpose they were set aside for, as long as I am not in default under this Agreement. You may directly pay these reserved items, reimburse me for payments I made, or reduce the reserves and increase the Loan proceeds available for disbursement.

**X. Additional Taxes.** I will pay all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to this Loan and any Loan Documents.

**Y. Additional Covenants.**

(1) Net proceeds from sale will come to United Security Bank with a minimum release price of par or $48,833 per lot. Payments will be applied first to principal at the par release. Funds will then be applied to current interest payments due and any remaining funds will be applied either to principal or an interest reserve account, at the discretion of the Bank.

(2) Bank controlled interest reserve account to be established for $58,000.00 (3 months interest).

**7. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.



**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

**8. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Loan immediately due. If I am a debtor in a bankruptcy petition or in an application filed under section 5(a)(3) of the Securities Investor Protection Act, the Loan is automatically accelerated and immediately due and payable without notice or demand upon filing of the petition or application.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of the Loan, and accrue interest at the highest post-maturity interest rate.

**E. Termination.** You may terminate my rights to obtain advances or other extensions of credit by any of the methods provided in this Agreement.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of the Loan against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of the Loan" means the total amount to which you are entitled to demand payment under the terms of the Loan at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Loan, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account. In addition, your right to set-off against any demand deposit accounts I have deposited with you may be limited by applicable California law. In certain circumstances, I may be entitled to a notice of set-off. State law may further limit your right of set-off.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**G. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**9. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses are limited to the costs actually incurred for recording, mailing, publishing, and posting legally required notices, costs of postponement not to exceed $50, litigation or trustee sale fees, and attorneys fees allowed by law. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

Wolters Kluwer Financial Services ©1996, 2009 Bankers Systems™



**10. APPLICABLE LAW.** This Agreement is governed by the laws of California, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**11. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. You may assign all or part of your rights or duties under this Agreement or the Loan Documents without my consent. If you assign this Agreement, all of my covenants, agreements, representations and warranties contained in this Agreement or the Loan Documents will benefit your successors and assigns. I may not assign this Agreement or any of my rights under it without your prior written consent. The duties of the Loan will bind my successors and assigns.

**12. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**13. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**14. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**15. SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

BORROWER:

Desert Equipment, Inc.

By _____
Jessie Warner, President

By _____
Charlotte Brook, Secretary

09/29/2009   09:25    6615882    UNITED SECURITY BANK

|  | LOAN NUMBER | ACCT. NUMBER | NOTE DATE | NOTE AMOUNT | MATURITY DATE |
|---|---|---|---|---|---|
| **PRIOR OBLIGATION INFORMATION** | 80986601 | 4401041 | 08/14/06 | $4,797,000.00 | 08/05/08 |

|  | LOAN NUMBER | ACCT. NUMBER | MODIFICATION DATE | NOTE AMOUNT |
|---|---|---|---|---|
| **AMENDED OBLIGATION INFORMATION** | 80986601 | 4402961 | 09/22/09 | $4,004,336.85 |
|  | **MATURITY DATE** | **INDEX (w/margin)** | **INTEREST RATE** | **INITIALS** |
|  | 12/05/09 | United Security Bank Reference Rate plus 1.250% | 4.500% | MM |

Creditor Use Only

## DEBT MODIFICATION AGREEMENT

**DATE AND PARTIES.** The date of this Debt Modification Agreement (Modification) is September 22, 2009. The parties and their addresses are:

**LENDER:**
  UNITED SECURITY BANK
  Bakersfield Office
  2126 Inyo Street
  Fresno, CA 93721
  Telephone: (559) 248-5074

**BORROWER:**
  DESERT EQUIPMENT, INC.
  a California Corporation
  2920 H Street, Suite 142
  Bakersfield, CA 93301

**1. DEFINITIONS.** In this Modification, these terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Modification, individually and together with their heirs, executors, administrators, successors, and assigns. "You" and "your" refer to the Lender, with its participants or syndicators, successors and assigns, or any person or entity that acquires an interest in the Modification or the Prior Obligation.

**B. Amended Obligation.** Amended Obligation is the resulting agreement that is created when the Modification amends the Prior Obligation. It is described above in the AMENDED OBLIGATION INFORMATION section.

**C. Loan.** Loan refers to this transaction generally. It includes the obligations and duties arising from the terms of all documents prepared or submitted in association with the Prior Obligation and this modification, such as applications, security agreements, disclosures, notes, agreements, and this Modification.

**D. Modification.** Modification refers to this Debt Modification Agreement.

**E. Prior Obligation.** Prior Obligation refers to my existing agreement described above in the PRIOR OBLIGATION INFORMATION section, and any previous extensions, renewals, modifications or substitutions of it.

**2. BACKGROUND.** You and I have previously entered into a Prior Obligation. As of the date of this Modification, the outstanding, unpaid balance of the Prior Obligation is $4,004,336.85. Conditions have changed since the execution of the Prior Obligation instruments. In response, and for value received, you and I agree to modify the terms of the Prior Obligation, as provided for in this Modification.



09/29/2009   09:25   6616682773                    UNITED SECURITY BANK                    PAG.

**3. TERMS.** The Prior Obligation is modified as follows:

**A. Interest.** Our agreement for the payment of interest is modified to read:

**(1) INTEREST.** Interest will accrue on the unpaid Principal balance of the Loan at the rate of 4.500 percent (Interest Rate) until September 23, 2009, after which time it may change as described in the Variable Rate subsection.

**(a) Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of the Loan will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**(b) Statutory Authority.** The amount assessed or collected on the Loan is authorized by the California Banking Law (Cal. Fin. Code, Div. 1).

**(c) Accrual.** Interest accrues using an Actual/360 days counting method.

**(d) Discounted Rate.** The stated rate reflects a discount of 1.250 percent, from the formula used to determine later rates (provided in the Variable Rate section). This Discounted Rate will be in effect until September 23, 2009.

**(e) Variable Rate.** The Interest Rate may change during the term of this transaction.

**(1) Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the United Security Bank Reference Rate.

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on the Loan will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

**(2) Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change September 23, 2009 and daily thereafter.

**(3) Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.250 percent. The result of this calculation will be rounded up to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on the Loan will never exceed the highest rate or charge allowed by law for the Loan.

**(4) Limitations.** The Interest Rate changes are subject to the following limitations:

Lifetime. Subject to the initial discount rate, the Interest Rate will never be less than 5.750 percent.

**(5) Effect Of Variable Rate.** A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments and the amount of the final payment will change.

**B. Maturity and Payments.** The maturity and payment provisions are modified to read:

**(1) PAYMENT.** I agree to pay the Loan in installments of accrued interest beginning October 5, 2009, and then on the 5th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on December 5, 2009.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**C. Security.** The security provision is modified to read:

**(1) New Collateral Added.** The following separate security instruments prepared together with this Modification have been added as security:

| Document Name | Parties to Document |
|---|---|
| Deed Of Trust Assignment - $1,000,000.00 Dick Carr, LLC | Desert Equipment, Inc. |
| Assignment Of Note - $1,000,000.00 Dick Carr, LLC | Desert Equipment, Inc. |

**D. Fees and Charges.** As additional consideration for your consent to enter into this Modification, I agree to pay, or have paid these additional fees and charges:

**(1) Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay the Loan before the scheduled maturity date.

Loan. A(n) Loan fee of $10,000.00 payable from separate funds on or before today's date.

(2) Minimum Finance Charge - Commercial/Ag. A(n) Minimum Finance Charge - Commercial/Ag equal to $150.00.

(3) Late Charge. If a payment is more than 15 days late, I will be charged 5.000 percent of the Unpaid Portion of Payment or $15.00, whichever is greater. I will pay this late charge promptly but only once for each late payment.

(4) Returned Check Charge. I agree to pay a fee not to exceed $15.00 for each check, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

**4. CONTINUATION OF TERMS.** Except as specifically amended by this Modification, all of the terms of the Prior Obligation shall remain in full force and effect.

**5. WAIVER.** I waive all claims, defenses, setoffs, or counterclaims relating to the Prior Obligation, or any document securing the Prior Obligation, that I may have. Any party to the Prior Obligation that does not sign this Modification, shall remain liable under the terms of the Prior Obligation unless released in writing by you.

**6. REASON(S) FOR MODIFICATION.**

(1) Renewal of the maturity date from July 5, 2009 to December 5, 2009.

(2) Change the loan from a Construction Line of Credit to a Commercial Term Loan.

**7. SIGNATURES.** By signing, I agree to the terms contained in this Modification. I also acknowledge receipt of a copy of this Modification.

BORROWER:

Desert Equipment, Inc.

By _____
Jessie Warner, President

By _____
Charlotte Brook, Secretary

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 80986601 | Desert Equipment, Inc. | 4402961 | 12/14/09 | MB |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $4,004,336.85 | United Security Bank Reference Rate plus 1.250% | 4.500% | 12/05/12 | Commercial |
|  |  | **Creditor Use Only** |  |  |

## PROMISSORY NOTE
(Commercial - Single Advance)
### RENEWAL NOTE

**DATE AND PARTIES.** The date of this Promissory Note (Note) is December 14, 2009. The parties and their addresses are:

**LENDER:**
> **UNITED SECURITY BANK**
> Bakersfield Office
> 2126 Inyo Street
> Fresno, CA 93721
> Telephone: (559) 248-5074

**BORROWER:**
> **DESERT EQUIPMENT, INC.**
> a California Corporation
> 2920 H Street, Suite 142
> Bakersfield, CA 93301

1. **DEFINITIONS.** As used in this Note, the terms have the following meanings:

   **A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note, individually and together. "You" and "Your" refer to the Lender.

   **B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

   **C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

   **D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

   **E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

   **F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

2. **RENEWAL.** This Note is a renewal of the following described note:

| Note Date | Note Number | Note Amount |
|---|---|---|
| August 14, 2006 | # 80986601 | $4,797,000.00 |

I have requested that the note listed in the table above be renewed. The remaining balance of the note listed in the table above is $4,004,336.85.

Desert Equipment, Inc.
California Promissory Note
CA/4psilegro0013970000688280180305
10N

Initials _____  Page 1

Wolters Kluwer Financial Services ©1996, 2010 Bankers Systems™

**EXHIBIT D**

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of **$4,004,336.85 (Principal)** plus interest from December 14, 2009 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **4.500 percent (Interest Rate)** until December 15, 2009, after which time it may change as described in the Variable Rate subsection.

**A. Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate otherwise payable as described in this section. In such event, interest will accrue on the unpaid Principal balance of this Note at a rate equal to the rate in effect prior to default, plus 3.000 percent, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.** The amount assessed or collected on this Note is authorized by the California Banking Law (Cal. Fin. Code, Div. 1).

**D. Accrual.** Interest accrues using an Actual/360 days counting method.

**E. Discounted Rate.** The stated rate reflects a discount of 1.250 percent, from the formula used to determine later rates (provided in the Variable Rate section). This Discounted Rate will be in effect until December 15, 2009.

**F. Variable Rate.** The Interest Rate may change during the term of this transaction.

**(1) Index.** Beginning with the first Change Date, the Interest Rate will be based on the following index: the United Security Bank Reference Rate.

The Current Index is the most recent index figure available on each Change Date. You do not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, you will substitute a similar index. You will give me notice of your choice.

**(2) Change Date.** Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change December 15, 2009 and daily thereafter.

**(3) Calculation Of Change.** On each Change Date you will calculate the Interest Rate, which will be the Current Index plus 1.250 percent. The result of this calculation will be rounded up to the nearest .001 percent. Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

**(4) Limitations.** The Interest Rate changes are subject to the following limitations:

**(a) Lifetime.** Subject to the initial discount rate, the Interest Rate will never be less than 5.750 percent.

**(5) Effect Of Variable Rate.** A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments and the amount of the final payment will change.

**5. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Note.

**6. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Note.

**A. Late Charge.** If a payment is more than 15 days late, I will be charged **5.000** percent of the Unpaid Portion of Payment or **$15.00**, whichever is greater. I will pay this late charge promptly but only once for each late payment.

**B. Returned Check Charge.** I agree to pay a fee not to exceed $15.00 for each check, negotiable order of withdrawal or draft I issue in connection with the Loan that is returned because it has been dishonored.

**C. Minimum Finance Charge - Commercial/Ag.** A(n) Minimum Finance Charge - Commercial/Ag equal to $150.00.

**7. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**8. PAYMENT.** I agree to pay this Note in installments of accrued interest beginning January 5, 2010, and then on the 5th day of each month thereafter. I agree to pay the entire unpaid Principal and any accrued but unpaid interest on December 5, 2012.

Payments will be rounded up to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due then to principal that is due, and finally to any charges that I owe other than principal and interest. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**9. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**10. LOAN PURPOSE.** The purpose of this Loan is for the renewal of a construction loan used to develop of 82 R-1 zoned lots in Indio, CA, which are now completed.

**11. ADDITIONAL TERMS.** (1) LIEN RELEASE FEE: In addition to all other charges, I agree, to the extent not prohibited by law, to pay all governmental fees for release of Lenders security interest in collateral securing this loan. I will pay these fees at the time the lien or liens are released.

(2) MINIMUM INTEREST CHARGE. I agree to pay a minimum interest charge of $150.00 if I pay this Note in full before you have earned that much in interest.

**12. SECURITY.** The Loan is secured by previously executed, separate security instruments described as follows:

| Description | Date |
|---|---|
| Security Agreement | August 14, 2006 |

The Loan is also secured by the following, previously executed, security instruments or agreements:

UCC-1 Financing Statement #07-7098825773, filed January 8, 2007 with the Secretary of State covering all inventory and fixtures.

UCC-1 Financing Statement #2006-0755980 filed October 13, 2006 with the Riverside County Recorder covering all inventory and fixtures.

Deed of Trust dated August 14, 2006, recorded October 13, 2006 with the Riverside County Recorder as Document #2006-0755979. Modification of Deed of Trust dated September 22, 2009, recorded December 17, 2009 as Document #2009-0647813 in the records of the Riverside County Recorder.

Assigned Note dated December 14, 2009 in the amount of $1,000,000.00 executed by Dick Carr, LLC, a Missouri Limited Liability Company.

Assigned Deed of Trust dated December 14, 2009, recorder December 17, 2009, with the Riverside County Recorder as Document #2009-0649413 executed by Dick Carr, LLC, a Missouri Limited Liability Company.

**13. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer

or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. However, if I am in default under this Agreement, I may not sell the inventory portion of the Property even in the ordinary course of business.

**14. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon your strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**15. SUSPENSION OF REMEDIES.** You may not use any Remedy if I fail to make a payment which becomes due during a disability claim period and for which disability insurance coverage is provided. However, this term will not prohibit the use of any remedy if a payment is for an amount advanced after I have given you notice of a disability claim, unless a different disability causes the nonpayment.

**16. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**17. APPLICABLE LAW.** This Note is governed by the laws of California, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**18. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**19. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing and executed by you and me. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or limitations of Sections 19(a), 32 or 35 of Regulation Z or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**20. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**21. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the

DATE AND PARTIES section, or to any other address designated in writing.  Notice to one Borrower will be deemed to be notice to all Borrowers.  I will inform you in writing of any change in my name, address or other application information.  I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property.  Time is of the essence.

**22. CREDIT INFORMATION.**  I agree to supply you with whatever information you reasonably request.  You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**23. ERRORS AND OMISSIONS.**  I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me.  I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**24. SIGNATURES.**  By signing, I agree to the terms contained in this Note.  I also acknowledge receipt of a copy of this Note.

**BORROWER:**

Desert Equipment, Inc.

By _____
Jessie Warner, President

By _____
Charlotte Brock, Secretary

## APPENDIX: FEES AND CHARGES

As described in the ADDITIONAL CHARGES section of the attached Note, I agree to pay, or have paid, these additional fees and charges.

**Nonrefundable Fees and Charges.**  The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**Additional Appraisal.**  A(n) Additional Appraisal fee of $4,950.00 payable from separate funds on or before today's date.

**Tax Service.**  A(n) Tax Service fee of $260.00 payable from separate funds on or before today's date.

**Loan.**  A(n) Loan fee of $10,000.00 payable from separate funds on or before today's date.

**Appraisal.**  A(n) Appraisal fee of $6,950.00 payable from separate funds on or before today's date.

Desert Equipment, Inc.
California Promissory Note
CA/4psllegro00139700006826016030510N

Wolters Kluwer Financial Services ©1996, 2010 Bankers Systems™

Initials
Page 6

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | AGREEMENT DATE | INITIALS |
|---|---|---|---|---|
| 80986601 | Desert Equipment, Inc. | 4402981 | 12/14/09 | MB |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $4,004,336.85 | United Security Bank Reference Rate plus 1.250% | 4.500% | 12/05/12 | Commercial |

Creditor Use Only

# COMMERCIAL LOAN AGREEMENT
### Single Advance Loan

**DATE AND PARTIES.** The date of this Commercial Loan Agreement (Agreement) is December 14, 2009. The parties and their addresses are as follows:

**LENDER:**
 **UNITED SECURITY BANK**
 Bakersfield Office
 2126 Inyo Street
 Fresno, CA 93721

**BORROWER:**
 **DESERT EQUIPMENT, INC.**
 a California Corporation
 2920 H Street, Suite 142
 Bakersfield, CA 93301

**1. DEFINITIONS.** For the purposes of this Agreement, the following terms have the following meanings.

 **A. Accounting Terms.** In this Agreement, any accounting terms that are not specifically defined will have their customary meanings under generally accepted accounting principles.

 **B. Insiders.** Insiders include those defined as insiders by the United States Bankruptcy Code, as amended; or to the extent left undefined, include without limitation any officer, employee, stockholder or member, director, partner, or any immediate family member of any of the foregoing, or any person or entity which, directly or indirectly, controls, is controlled by or is under common control with me.

 **C. Loan.** The Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

 **D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

 **E. Pronouns.** The pronouns "I", "me" and "my" refer to every Borrower signing this Agreement, individually or together. "You" and "your" refers to the Loan's lender.

 **F. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**2. SINGLE ADVANCE.** In accordance with the terms of this Agreement and other Loan Documents, you will provide me with a term note in the amount of $4,004,336.85 (Principal). I will receive the funds from this Loan in one advance. No additional advances are contemplated, except those made to protect and preserve your interests as provided in this Agreement or other Loan Documents.

**3. MATURITY DATE.** I agree to fully repay the Loan by December 5, 2012.

**4. WARRANTIES AND REPRESENTATIONS.** I make to you the following warranties and representations which will continue as long as this Loan is in effect, except when this Agreement provides otherwise.

**A. Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

**B. Authority.** The execution, delivery and performance of this Loan and the obligation evidenced by the Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.

**C. Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

**D. Hazardous Substances.** Except as I previously disclosed in writing and you acknowledge in writing, no Hazardous Substance, underground tanks, private dumps or open wells are currently located at, on, in, under or about the Property.

**E. Use of Property.** After diligent inquiry, I do not know or have reason to know that any Hazardous Substance has been discharged, leached or disposed of, in violation of any Environmental Law, from the property onto, over or into any other property, or from any other property onto, over or into the property.

**F. Environmental Laws.** I have no knowledge or reason to believe that there is any pending or threatened investigation, claim, judgment or order, violation, lien, or other notice under any Environmental Law that concerns me or the property. The property and any activities on the property are in full compliance with all Environmental Law.

**G. Loan Purpose.** The purpose of this Loan is for the renewal of a construction loan used to develop of 82 R-1 zoned lots in Indio, CA, which are now completed.

**H. No Other Liens.** I own or lease all property that I need to conduct my business and activities. I have good and marketable title to all property that I own or lease. All of my Property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those to you or those you consent to in writing.

**I. Compliance With Laws.** I am not violating any laws, regulations, rules, orders, judgments or decrees applicable to me or my property, except for those which I am challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should I lose.

**J. Legal Dispute.** There are no pending or threatened lawsuits, arbitrations or other proceedings against me or my property that singly or together may materially and adversely affect my property, operations, financial condition, or business.

**K. Adverse Agreements.** I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations.

**L. Other Claims.** There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents. No outstanding claims or rights exist that may result in a lien on the Property, the Property's proceeds and the proceeds of proceeds, except liens that were disclosed to and agreed to by you in writing.

**M. Solvency.** I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities. I will not become insolvent by the execution or performance of this Loan.

**5. FINANCIAL STATEMENTS.** I will prepare and maintain my financial records using consistently applied generally accepted accounting principles then in effect. I will provide you with financial information in a form that you accept and under the following terms.

**A. Certification.** I represent and warrant that any financial statements that I provide you fairly represents my financial condition for the stated periods, is current, complete, true and accurate in all material respects, includes all of my direct or contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date the financial information was prepared.

**B. Frequency.** In addition to the financial statements provided to you prior to closing, I will provide you with current financial statements on an annual basis, or as otherwise requested by you, until I have performed all of my obligations under the Loan and you terminate the Loan in writing.

**C. SEC Reports.** I will provide you with true and correct copies of all reports, notices or statements that I provide to the Securities and Exchange Commission, any securities exchange or my stockholders, owners, or the holders of any material indebtedness as soon as available or at least within days after issuance.

**D. Requested Information.** I will provide you with any other information about my operations, financial affairs and condition within 30 days after your request.

**E. Additional Financial Statements Term.** Borrower to provide Lender with annual financial statements and tax returns within 90 days of fiscal year end.

**6. COVENANTS.** Until the Loan and all related debts, liabilities and obligations are paid and discharged, I will comply with the following terms, unless you waive compliance in writing.

**A. Participation.** I consent to you participating or syndicating the Loan and sharing any information that you decide is necessary about me and the Loan with the other participants or syndicators.

**B. Inspection.** Following your written request, I will immediately pay for all one-time and recurring out-of-pocket costs that are related to the inspection of my records, business or Property that secures the Loan. Upon reasonable notice, I will permit you or your agents to enter any of my premises and any location where my Property is located during regular business hours to do the following.

    **(1)** You may inspect, audit, check, review and obtain copies from my books, records, journals, orders, receipts, and any correspondence and other business related data.

    **(2)** You may discuss my affairs, finances and business with any one who provides you with evidence that they are a creditor of mine, the sufficiency of which will be subject to your sole discretion.

    **(3)** You may inspect my Property, audit for the use and disposition of the Property's proceeds and proceeds of proceeds; or do whatever you decide is necessary to preserve and protect the Property and your interest in the Property.

After prior notice to me, you may discuss my financial condition and business operations with my independent accountants, if any, or my chief financial officer and I may be present during these discussions. As long as the Loan is outstanding, I will direct all of my accountants and auditors to permit you to examine my records in their possession and to make copies of these records. You will use your best efforts to maintain the confidentiality of the information you or your agents obtain, except you may provide your regulator, if any, with required information about my financial condition, operation and business or that of my parent, subsidiaries or affiliates.

**C. Business Requirements.** I will preserve and maintain my present existence and good standing in the jurisdiction where I am organized and all of my rights, privileges and franchises. I will do all that is needed or required to continue my business or activities as presently conducted, by obtaining licenses, permits and bonds everywhere I engage in business or activities or own, lease or locate my property. I will obtain your prior written consent before I cease my business or before I engage in any new line of business that is materially different from my present business.

**D. Compliance with Laws.** I will not violate any laws, regulations, rules, orders, judgments or decrees applicable to me or my Property, except for those which I challenge in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should I lose. Laws include without limitation the Federal Fair Labor Standards Act requirements for producing goods, the federal Employee Retirement Income Security Act of 1974's requirements for the establishment, funding and management of qualified deferred compensation plans for employees, health and safety laws, environmental laws, tax laws, licensing and permit laws. On your request, I will provide you with written evidence that I have fully and timely paid my taxes, assessments and other governmental charges levied or imposed on me, my income or profits and my property. Taxes include without limitation sales taxes, use taxes, personal property taxes, documentary stamp taxes, recordation taxes, franchise taxes, income taxes, withholding taxes, FICA taxes and unemployment taxes. I will adequately provide for the payment of these taxes, assessments and other charges that have accrued but are not yet due and payable.

**E. New Organizations.** I will obtain your written consent before organizing, merging into, or consolidating with an entity; acquiring all or substantially all the assets of another; materially changing the legal structure, management, ownership or financial condition; or effecting or entering into a domestication, conversion or interest exchange.

**F. Dealings with Insiders.** I will not purchase, acquire or lease any property or services from, or sell, provide or lease any property or services to, or permit any outstanding loans or credit extensions to, or otherwise deal

with, any insiders except as required under contracts existing at the time I applied for the Loan and approved by you or as this Agreement otherwise permits. I will not change or breach these contracts existing at Loan application so as to cause an acceleration of or an increase in any payments due.

**G. Other Debts.** I will pay when due any and all other debts owed or guaranteed by me and will faithfully perform, or comply with all the conditions and obligations imposed on me concerning the debt or guaranty.

**H. Other Liabilities.** I will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations, except: debt in existence on the date of this Agreement and fully disclosed to you; debt subordinated in payment to you on conditions and terms acceptable to you; accounts payable incurred in the ordinary course of my business and paid under customary trade terms or contested in good faith with reserves satisfactory to you.

**I. Notice to You.** I will promptly notify you of any material change in my financial condition, of the occurrence of a default under the terms of this Agreement or any other Loan Document, or a default by me under any agreement between me and any third party which materially and adversely affects my property, operations, financial condition or business.

**J. Certification of No Default.** On your request, my chief financial officer or my independent accountant will provide you with a written certification that to the best of their knowledge no event of default exists under the terms of this Agreement or the other Loan Documents, and that there exists no other action, condition or event which with the giving of notice or lapse of time or both would constitute a default. As requested, my chief financial officer or my independent accountant will also provide you with computations demonstrating compliance with any financial covenants and ratios contained in this Agreement. If an action, condition or event of default does exist, the certificate must accurately and fully disclose the extent and nature of this action, condition or event and state what must be done to correct it.

**K. Use of Loan Proceeds.** I will not permit the loan proceeds to be used to purchase, carry, reduce, or retire any loan originally incurred to purchase or carry any margin stock or otherwise cause the Loan to violate Federal Reserve Board Regulations U or X, or Section 8 of the Securities and Exchange Act of 1934 and its regulations, as amended.

**L. Dispose of No Assets.** Without your prior written consent or as the Loan Documents permit, I will not sell, lease, assign, transfer, dispose of or otherwise distribute all or substantially all of my assets to any person other than in the ordinary course of business for the assets' depreciated book value or more.

**M. No Other Liens.** I will not create, permit or suffer any lien or encumbrance upon any of my properties for or by anyone, other than you, except for: nonconsensual liens imposed by law arising out of the ordinary course of business on obligations that are not overdue or which I am contesting in good faith after making appropriate reserves; valid purchase money security interests on personal property; or any other liens specifically agreed to by you in writing.

**N. Guaranties.** I will not guaranty or become liable in any way as surety, endorser (other than as endorser of negotiable instruments in the ordinary course of business) or accommodation endorser or otherwise for the debt or obligations of any other person or entity, except to you or as you otherwise specifically agree in writing.

**O. No Default under Other Agreements.** I will not allow to occur, or to continue unremedied, any act, event or condition which constitutes a default , or which, with the passage of time or giving of notice, or both, would constitute a default under any agreement, document, instrument or undertaking to which I am a party or by which I may be bound.

**P. Legal Disputes.** I will promptly notify you in writing of any threatened or pending lawsuit, arbitration or other proceeding against me or any of my property, not identified in my financial statements, whose claim exceeds $50,000.00 or that singly or together with other proceedings may materially and adversely affect my property, operations, financial condition or business. I will use my best efforts to bring about a favorable and speedy result of any of these lawsuits, arbitrations or other proceedings.

**Q. Other Notices.** I will immediately provide you with any information that may materially and adversely affect my ability to perform this Agreement and of its anticipated effect.

**R. No Change in Capital.** I will not release, redeem, retire, purchase or otherwise acquire, directly or indirectly, any of my capital stock or other equity security or partnership interest, or make any change in my capital structure, except to the extent required by any agreements signed prior to this Agreement and disclosed to you or with your prior written consent.

**S. Loan Obligations.** I will make full and timely payment of all principal and interest obligations, and comply with the other terms and agreements contained in this Agreement and in the other Loan Documents.

**T. Insurance.** I will obtain and maintain insurance with insurers, in amounts and coverages that are acceptable to you and customary with industry practice. This may include without limitation insurance policies for public liability, fire, hazard and extended risk, workers compensation, and, at your request, business interruption and/or rent loss insurance. At your request, I will deliver to you certified copies of all of these insurance policies, binders or certificates. I will obtain and maintain a mortgagee or lender loss payee endorsement for you when these endorsements are available. I will immediately notify you of cancellation or termination of insurance. I will require all insurance policies to provide you with at least 10 days prior written notice to you of cancellation or modification. I consent to you using or disclosing information relative to any contract of insurance required by the Loan for the purpose of replacing this insurance. I also authorize my insurer and you to exchange all relevant information related to any contract of insurance required by any document executed as part of this Loan.

**U. Property Maintenance.** I will keep all tangible and intangible property that I consider necessary or useful in my business in good working condition by making all needed repairs, replacements and improvements and by making all rental, lease or other payments due on this property.

**V. Property Loss.** I will immediately notify you, and the insurance company when appropriate, of any material casualty, loss or depreciation to the Property or to my other property that affects my business.

**W. Reserves.** You may set aside and reserve Loan proceeds for Loan interest, fees and expenses, taxes, and insurance. I grant you a security interest in the reserves.

No interest will accrue on any reserve Loan proceeds. Disbursement of reserves is disbursement of the Loan's proceeds. At my request, you will disburse the reserves for the purpose they were set aside for, as long as I am not in default under this Agreement. You may directly pay these reserved items, reimburse me for payments I made, or reduce the reserves and increase the Loan proceeds available for disbursement.

**X. Additional Taxes.** I will pay all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to this Loan and any Loan Documents.

**Y. Additional Covenants.**

(1)  Borrower to ensure release of the 1st Deed of Trust for $500,000.00 on the 32 condo lot property by June 5, 2010, or a $500,000.00 principal reduction will be required.

(2)  Borrower to provide a copy of the commitment letter to the Bank prior to month end February 28, 2010.

(3)  Sale of at least one Phase in the first 12 months (based on the original extension on July 5, 2009), or by July 5, 2010.

(4)  Sale of at least two additional phases in months 13-24 or by July 5, 2011.

(5)  If absorption conditions above are not met, the Bank will look to term out the debt.

(6)  Net proceeds from sale will come to United Security Bank with a minimum release price of par, or $48,833/lot. Payments will be applied first to principal at the par release. Funds will then be applied to current interest payments due and any remaining funds will be applied either to principal or an interest reserve account, at the discretion of the Bank.

(7)  Receipt of current Wells Fargo statement from guarantor Charlotte Brock prior to renewal.

**7. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

**C. Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

**8. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Loan immediately due. If I am a debtor in a bankruptcy petition or in an application filed under section 5(a)(3) of the Securities Investor Protection Act, the Loan is automatically accelerated and immediately due and payable without notice or demand upon filing of the petition or application.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of the Loan, and accrue interest at the highest post-maturity interest rate.

**E. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of the Loan against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of the Loan" means the total amount to which you are entitled to demand payment under the terms of the Loan at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Loan, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account. In addition, your right to set-off against my demand deposit accounts I have deposited with you may be limited by applicable California law. In certain circumstances, I may be entitled to a notice of set-off. State law may further limit your right of set-off.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**F. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

Desert Equipment, Inc.
California Commercial Loan Agreement
CA/4psilegro00139700006828018030510Y
Wolters Kluwer Financial Services ©1996, 2010 Bankers Systems™
Initial _____
Page 6

**9. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses are limited to the costs actually incurred for recording, mailing, publishing, and posting legally required notices, costs of postponement not to exceed $50, litigation or trustee sale fees, and attorneys fees allowed by law. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**10. APPLICABLE LAW.** This Agreement is governed by the laws of California, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**11. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. You may assign all or part of your rights or duties under this Agreement or the Loan Documents without my consent. If you assign this Agreement, all of my covenants, agreements, representations and warranties contained in this Agreement or the Loan Documents will benefit your successors and assigns. I may not assign this Agreement or any of my rights under it without your prior written consent. The duties of this Loan will bind my successors and assigns.

**12. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**13. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**14. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**15. SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

**BORROWER:**

Desert Equipment, Inc.

By _____
Jessie Warner, President

By _____
Charlotte Brock, Secretary

FORM B104 (08/07)                                                                            2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>United Security Bank | DEFENDANTS<br>Desert Equipment, Inc. |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Timothy Jones & John P. Kinsey, Wanger Jones Helsley PC<br>265 E. River Park Circle, Suite 310, Fresno, CA 93720<br>(559) 233-4800 | ATTORNEYS (If Known)<br>Wolfgang F. Hahn, Wolfgang F. Hahn & Associates<br>7160 Caminito Pepino, La Jolla, CA 92037<br>(858) 535-1000 |
| PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor     ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☑ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
(1) For a Determination that the Debt Owed to USB Is Not Dischargeable under 11 U.S.C. § 523(a)(2)(A) (fraud)
(2) For a Determination that the Debt Owed to USB Is Not Dischargeable under 11 U.S.C. § 523(a)(2)(B) (false financial statement)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**

☐ 11-Recovery of money/property - §542 turnover of property

☐ 12-Recovery of money/property - §547 preference

☐ 13-Recovery of money/property - §548 fraudulent transfer

☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**

☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims

☑ 62-Dischargeability - §523(a)(2), false pretenses, false
     representation, actual fraud

☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement,
     larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**

☐ 61-Dischargeability - §523(a)(5), domestic support

☐ 68-Dischargeability - §523(a)(6), willful and malicious injury

☐ 63-Dischargeability - §523(a)(8), student loan

☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
     (other than domestic support)

☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**

☐ 71-Injunctive relief – imposition of stay

☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**

☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**

☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**

☐ 01-Determination of removed claim or cause

**Other**

☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.

☐ 02-Other (e.g. other actions that would have been brought in state
     court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 3,920,455.28 |

**Other Relief Sought**
* Request for grant of a non-dischargeable judgment in favor of Creditor against Debtor, in an amount to be determined, including without limitation, pre-judgment and post-judgment interest as provided by law, reasonable attorneys' fees, costs and expenses.

FORM B104 (08/07), page 2                                          2007 USBC, Central District of California

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | | BANKRUPTCY CASE NO. |
|---|---|---|
| Desert Equipment, Inc. | | 6:12-bk-17663 |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| Central | Riverside | Hon. Deborah Saltzman |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| | | |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| | | |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

| DATE | *for* PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| 6/28/12 | John P. Kinsey<br>Attorney for Plaintiff United Security Bank |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.